**Albert L. PETERS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–8809–CR–00815.**

Supreme Court of Indiana.

Sept. 5, 1989.

Reginald B. Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Albert L. Peters was found guilty following a jury trial in the Marion Superior Court of the crimes of Count I, Rape, a Class A felony, Count II, Criminal Deviate Conduct, a Class A felony, and Count III, Criminal Confinement, a Class B felony. The trial court sentenced Peters to a term of fifty (50) years, thirty (30) years enhanced by twenty (20) years,

for each of Counts I and II. He was sentenced to a term of twenty (20) years for Criminal Confinement. All sentences were to run concurrently but to be served consecutively to a sentence imposed under C.R. 86–48(b), a previous conviction.

We have consolidated Peters' claims of error in this direct appeal into four issues as follows:

1. sufficiency of the evidence;
2. denial of Peters' motion for a mistrial when a police witness referred to mug shots;
3. denial of Peters' motion for a mistrial on a showing the jury had been exposed to an out-of-court communication with a witness; and
4. error in sentencing.

The facts show that on May 28, 1986, the complaining witness, P.S., lived at the Grassmore Apartments in Indianapolis, Indiana. At about 6:30 a.m. on that day she walked across the street to a gasoline station located on 38th Street to buy some cigarettes. As she was walking across the parking lot behind her apartment building, a man approached her from the rear, put his arm around her and put a gun to her side. He forced the victim into the basement of a building in the complex. He forced her to commit fellatio on him and then raped her. During all of these incidents, he threatened her with a pistol. Victim P.S. identified Peters as the perpetrator of the crimes from a photo array the police showed her, at a lineup, and at the trial.

I

 Peters' contention there was insufficient evidence to support his convictions is based on identification. He claimed the testimony of the victim was so conflicting that it did not establish his identification beyond a reasonable doubt. We neither weigh evidence nor judge credibility in a review of this issue. Rather, we examine the evidence most favorable to the State together with all inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion that the defendant is guilty beyond

a reasonable doubt, the verdict will not be disturbed. *Neal v. State* (1983), Ind., 451 N.E.2d 657, 658. Equivocation by identification witnesses on minor details, such as color of the assailant's hair or his height, are matters of credibility to be resolved by the trier of fact. A conviction for rape can rest on the uncorroborated testimony of the victim even though there is equivocation or inconsistency in that testimony. *Id.*

 The police showed the victim an array of photographs and she positively identified Peters from one of them. About eighteen months later, Peters was apprehended and the victim positively identified him from a lineup. She had originally stated that at the time of this incident, Peters had acne on his face and at the time of identification he did not. She took about ten minutes to examine each of the six men in the lineup, stating she did so in order to be absolutely sure she picked the right man because all of them were very similar in general appearance. She also stated Peters' hairstyle was different than it was at the time of the incident, and this fact was corroborated by investigating police officers. She stated she was positive in picking out Peters' photograph, in picking him from the lineup, and in identifying him in court. Forensic seriological tests showed there was semen present in the victim's vagina immediately after the rape, but no comparative study was made of Peters' blood type.

About four days after the incident, Detective Stephen Odle spoke with Raymond Shannon, a maintenance worker at the Grassmore complex. Shannon told Detective Odle at that time that he and several other workers were standing outside the apartment complex and saw Peters, with whom he was acquainted, chasing a young girl with a drawn handgun. He said he did not interfere because he feared he would be shot. At trial, Shannon testified but stated only that he saw Peters in the apartment complex on the morning of the incident. He was not able to exactly state the time but thought it was probably 7:30 a.m. He testified that, a week before the rape, Peters had asked him if he knew anyone

who wanted to buy a gun as he had one for sale. Witness Valerie Jones, a witness for the defense, lived in the apartment complex and heard a girl crying for help at about 6:30 a.m. on the day in question. She looked out her window and saw a man with a gun struggling with a woman. She was not able to identify Peters as the man she saw with the gun and, when shown a photograph of Peters, did not think he was the man she had seen on that morning.

Officer Ricky Clark of the Indianapolis Police Department testified that citizens in the area knew Peters was wanted for the rape and kept calling the police department when they saw him in the area. On one occasion, Clark got a call from someone who stated Peters was at a residence on Sherman Drive. When Clark entered the home with permission of the owner, he saw Peters climbing out a back window of the house.

Witness Joanie Malone testified as an alibi witness for Peters. She is the girlfriend of Peters' brother and testified that on May 27, 1986, she left to go to a party about 11:30 p.m. and Peters stayed at her home in the Grassmore complex to babysit with her daughter. She returned the next day about 5:30 to 6:00 a.m. and Peters was asleep on the floor in her apartment. She then fixed breakfast and did not leave again until about 8:30 a.m. However, on cross-examination, she said the party might have been on the 26th of May. She told Detective Odle it was more likely that the party occurred on a Friday or Saturday and this incident occurred on Wednesday. All of this evidence presents conflicts and equivocation of witnesses but at the same time contains evidence which, if believed by the jury, supports the verdicts of guilty.

## II

■ State's witness Detective Stephen Odle testified on direct examination that he had shown the victim some photographs. In answering questions regarding the origin of the photographs, the officer stated that they were several trays of what he called "mug shots." Peters moved for a mistrial based on the prejudicial impact

that the term "mug shot" would have on the jury. The court then held a hearing on the motion and it was established that Peters' photo was not in the array of "mug shots" shown to the victim on that day, so he was not referring to Peters' photo. The trial court then overruled Peters' motion and admonished the jury that they were not to consider the statement made by Detective Odle as evidence.

■ Peters claims the trial court committed reversible error by denying this motion for mistrial because the prosecutor deliberately attempted to prejudice Peters by eliciting the response from the witness and Peters was placed in a position of grave peril to which he should not have been subjected. Peters' claim of deliberate attempt by the State is prompted by the prosecutor asking Detective Odle, "Where did the photographs come from that you showed her?" The explanation for this question was that the array of photographs shown to the victim were not only police "mug shots" but also came from other sources including a high school year book furnished by one of the witnesses. However, the fact remains that Peters' photograph was not in the array of "mug shots," that, in using the term "mug shots," Detective Odle was not referring to Peters' photograph, that no identification of Peters or anyone else came from that photo examination, and that there was no testimony that it did. Furthermore, the jury was admonished to disregard the statement and a prompt admonishment is presumed to cure error resulting from the admission of improper evidence. *Martin v. State* (1988), Ind., 528 N.E.2d 461, 464. The officer went on to testify that, at a subsequent time, the victim was shown six photographs, and from them she picked a photograph of Peters as the perpetrator of these crimes.

It is well established the trial court has discretion in ruling on a motion for mistrial. That discretion will be disturbed only if the defendant was placed in a position of grave peril to which he should not have been subjected, or if the prosecution deliberately attempted to prejudice the defen-

dant. *Coleman v. State* (1986), Ind., 490 N.E.2d 325, 328. We see no abuse of discretion in the ruling of the trial court here resulting in prejudice meriting reversal.

### III

Witness Joanie Malone testified as an alibi witness for Peters. Her testimony was that she is the girlfriend of Peters' brother. On May 27, 1986, at about 11:30 p.m., she left to go to a party and Peters stayed at her home in the Grassmore complex to babysit with her daughter. She returned home the next day about 5:30 or 6:00 a.m. and Peters was asleep on the floor in her apartment. She then fixed breakfast and did not leave again until about 8:30 a.m. On cross-examination, she stated that the party might have been on the 26th of May, 1986. She told Detective Odle it was more likely that the party occurred on a Friday or Saturday, although the incident involved in in the instant case occurred on a Wednesday.

After Malone testified, and during a recess, two of the jurors were in the rest room. The alternate juror, Theresa Sutt, was washing her hands, and Mrs. Young, a juror, was in a stall. Sutt testified that Joanie Malone came into the restroom and sang, or said in a singsong manner, "What some people won't do for money." Mrs. Young became upset after being told that it was Mrs. Malone singing and began to cry while in the presence of the other jurors. The incident was brought to the attention of the court and Peters moved for a mistrial. After a hearing in which each juror was *voir dired,* the motion was denied and the jury was admonished. Young testified that the incident had scared her but she realized Peters had no control over what had happened and the witness had nothing to do with Peters. Several other jurors indicated they gave thought to the incident but they were able to set aside any apprehension they felt and decide the case. Eight of the jurors said the incident would have no effect on their decision. The trial court gave a lengthy admonishment directing the jury not to consider the incident and to decide the case solely on the evidence heard in the courtroom.

Denial of a motion for mistrial lies largely within the discretion of the trial court and the reviewing court will reverse the trial court's discretion only when it is shown the defendant was placed in a position of grave peril to which he should not have been subjected. *Pillow v. State* (1985), Ind., 479 N.E.2d 1301, 1306. When the jury is admonished by the trial judge to disregard what has occurred at trial, it usually is considered a sufficient curative measure so that his refusal to grant a mistrial does not amount to reversible error. *Adkins v. State* (1988), Ind., 524 N.E.2d 1274, 1275; *Smith v. State* (1978), 270 Ind. 1, 3, 382 N.E.2d 937, 939. In the instant case, some of the jurors testified that the incident had frightened them or caused them concern, but all stated it would not affect their ability to serve as a juror. They were admonished by the court and we see no error meriting reversal in the trial court's denial of Peters' motion for mistrial meriting reversal. *See Tacy v. State* (1983), Ind., 452 N.E.2d 977, 982.

### IV

Peters claims the sentence imposed by the trial court was manifestly unreasonable. The trial court sentenced him to a period of fifty (50) years for Count I, Rape, the presumptive sentence thirty (30) year term enhanced by twenty (20) years due to aggravating circumstances. The sentence for Count II, Sexual Deviate Conduct, was the same as that for Count I and the sentence for Count III, Confinement, was for a period of twenty (20) years. The sentences for all of these three counts ran concurrently but were to be served consecutively to the sentence imposed under a previous conviction.

During the sentencing hearing, the discussion included Peters' two prior felony convictions, one a class C felony and one a class D felony. The class D felony was based on a conviction of reckless homicide and Peters had not yet completed serving his sentence for that charge. In addition, there was discussion concerning a letter from the victim to the court describing the

difficulty the victim had had because of the traumatic effect of this violation upon her. She described her intense fear of being alone, of being the victim of another such attack, and of her fear that Peters would do this to her again. She expressed hope she could put this behind her and go on with her life but was uncertain that she would be able to do so.

■■■ The trial court found as aggravators Peters' past criminal activity, his need of correctional rehabilitative treatment that can best be provided by commitment to a penal institution and the effect Peters' crime had upon the victim. The court made no statement regarding mitigating circumstances. The trial judge's elaboration of reasons for fixing the penalty he did are minimal but are supported by the record. Peters states one ground for his finding that the trial court manifestly abused its discretion by imposing the sentence was that the court should have considered as a mitigating circumstance that Peters did not physically harm the victim. He further claims he maintained his innocence throughout the proceedings and the victim's identification was highly equivocal and strongly challenged by defense witnesses. In *Johnson v. State* (1983), Ind., 447 N.E.2d 1072, this Court stated, "When a sentence is within the statutory limits, we are not at liberty to set aside or alter the sentence unless the record indicates there is a manifest abuse of discretion." *Id.* at 1075–76. The sentence in the instant case is within the statutory limits. *See* IC 35–50–2–4 and 35–50–2–5. The same can be said of imposing a consecutive term pursuant to IC 35–38–1–7(b)(2) and (3) and (d). It is not mandatory that the trial court explain why he chose not to make findings of mitigation. This is particularly true when an examination of the underlying record shows the highly disputable nature of the mitigating factors. It is discretionary with the court to consider or refer to mitigating circumstances. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254.

■ We see no merit in the contention that the lack of physical injury to the victim in the perpetration of this violent crime is a mitigating factor. It would have been an additional aggravator had Peters physically harmed her. On the other hand, the trial court had before it evidence that the victim had been violated and as a result had suffered serious emotional and psychological injury.

Peters' attack on the sentences imposed are that they are manifestly unreasonable pursuant to Rule 2 of Ind.R.App.Rev.Sen. Rule 2 provides this Court will not revise a sentence authorized by statute except where it is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence is imposed. The sentences here were authorized by statute and we fail to find them so manifestly unreasonable under the facts and circumstances here that they merit rejection or revision.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs in result without opinion.