Howard L. JACKSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8911–CR–854.

Supreme Court of Indiana.

July 24, 1991.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant Jackson was convicted by a jury of attempted murder. He was sentenced to fifty (50) years, enhanced by thirty (30) years by reason of his status as an habitual offender for a total of eighty (80) years. Jackson identifies six issues in this direct appeal. Restated, they are as follows:

I. Sufficiency of the evidence to support the habitual offender finding.

II. Improper admission of videotaped deposition of a witness.

III. Improper instructions.

IV. Improper denial of motion for mistrial.

V. Abuse of discretion in not allowing a continuance to recall a witness.

VI. Ineffective assistance of counsel.

We affirm.

The facts are: In September 1988, Darryl Griffin, the victim, was married to Darlene Griffin, Jackson's ex-wife. During the night of September 19, 1988, Darryl was in the process of leaving his apartment in order to go to work when, as he approached his automobile, he heard footsteps. As he turned, he saw Jackson approaching him. When Jackson was within inches of Griffin, he shot Griffin in the left side of the lower neck. Jackson fled the scene. Griffin lost consciousness temporarily, but regained it and re-entered his apartment where he notified his wife and later the police that Jackson had shot him. Jackson was apprehended later by the police.

I. *Sufficiency of Evidence to Support the Habitual Offender Finding*

Jackson contends that the evidence was insufficient to sustain his status as an habitual offender. To establish habitual offender status, the State must show that the second offense was committed after the commission of and sentencing upon the first offense; and that the principal offense upon which the enhancement is being sought was committed after commission of and sentencing upon the second offense.

*See McCombs v. State* (1989), Ind., 536 N.E.2d 277, 279.

The record reveals that Jackson committed robbery on September 28, 1962, and was charged with the offense on October 3, 1962. Jackson was sentenced for this crime on April 4, 1963. On December 30, 1985, Jackson was charged with a theft he committed two days earlier. On October 10, 1986, he pled guilty to theft and was sentenced. However, Jackson argues that the second felony was proved only by the introduction of a minute sheet from the Marion Municipal Court and not by a certified copy of a judgment of conviction.

■ In addition, as to the first felony, he contends that the proof of the felony was defective because it does not recite a conviction and is unsigned by the Judge. Upon review of the record, we find both of Jackson's contentions to be without merit. In both instances, official certified copies of the minute sheets were obtained from the Clerk's office and both recite the felonies committed by Jackson. We find no error in the utilization of these documents to prove the habitual offender status.

■ Jackson also contends that the evidence is insufficient because of the "staleness" of the 1963 conviction that was introduced by the State. He contends that the Indiana Constitution precludes reliance by the State upon a conviction more than 25 years old to establish his status as an habitual offender. We find nothing in IND. CODE ANN. § 35–50–2–8 (West 1990) or the Indiana Constitution to support this argument. The statute provides only two instances in which a prior conviction may not be used in the proceeding. These are: (1) a prior conviction that has been set aside and (2) one for which the person has been pardoned. The legislature has not included remoteness of the prior conviction as disqualifying the prior conviction. Additionally, the requirement of article I, section 18 of the Indiana Constitution that "[t]he penal code shall be founded on the principles of reformation, and not of vindictive justice" does not require us to re-write the statute.

## II. *Improper Admission of Videotaped Deposition*

■ Appellant contends that the trial court erred in allowing the State to present a videotaped deposition of a State's witness.

On June 16, 1989, the State filed a notice to take a videotaped deposition of a witness on June 20, 1989, for the purpose of introduction into evidence at trial. The State indicated in the notice that the witness would be unavailable to testify in person on June 22, 1989, due to health problems. Jackson's attorney attended the deposition and conducted a thorough cross-examination. At trial, Jackson objected to the use of the videotaped deposition claiming the witness was not "unavailable medically." Following arguments on this issue, the trial court overruled the objection. Jackson contends the State did not meet its burden of demonstrating the unavailability of the witness and thus contends he was denied his right to confront the witness.

The decision whether to allow the admission of a deposition is within the trial court's discretion. *Johnston v. State* (1988), Ind., 517 N.E.2d 397, 399. Pursuant to Ind.Trial Rule 32(A)(3)(c), the deposition of a witness may be used by any party for any purpose if the court finds that a witness is unable to attend and testify because of age, sickness, infirmity, or imprisonment. During her deposition, the witness testified about her inability, because of her physical ailments and limitations, to attend the trial in order to testify. In considering this evidence, the trial court exercised its discretion and allowed the videotaped deposition to be introduced into evidence. We cannot say that the trial court abused its discretion.

## III. *Instructions*

Appellant contends that the trial court erred in the giving of various instructions and contends fundamental error occurred in the giving of Instruction No. 5 concerning the elements of attempted murder. Instruction No. 5 reads as follows:

The crime of attempt[ed] murder is defined by statute as follows:

A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a Class A felony.

To convict the Defendant the State must have proved each of the following elements:

The Defendant
1. did knowingly
2. engage in conduct to-wit: attempt to commit the crime of murder by attempting to kill Darryl A. Griffin
3. another human being
4. by knowingly shooting at and against the person of Darryl A. Griffin by means of a deadly weapon to-wit: a handgun
5. that the conduct was a substantial step toward the commission of the crime of murder.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of attempted murder, a Class A felony.

Jackson did not object to this instruction, but on appeal claims fundamental error occurred, citing *Abdul–Wadood v. State* (1988), Ind., 521 N.E.2d 1299 and *Smith v. State* (1984), Ind., 459 N.E.2d 355, asserting that the instruction failed "to require the finding of proof beyond a reasonable doubt of specific intent to commit murder." We agree that the element of "intent to kill" as required by *Abdul–Wadood, Smith* and, more recently, by *Spradlin v. State* (1991), Ind., 569 N.E.2d 948, is lacking in the instruction. We further agree that while reversible error may have followed had an objection to the instruction been overruled and a tender of a proper instruction been refused, neither of these two

events occurred. Reversal in this case must be based on a determination of whether the giving of the instruction constituted fundamental error. We conclude that fundamental error, requiring reversal, did not occur.

■ Fundamental error is error that, if not corrected, would deny a defendant fundamental due process. *Smith*, 459 N.E.2d at 357. In *Smith*, as in the instant case, no objection was made to an instruction setting forth the elements of attempted murder. Nevertheless, we reversed the conviction because the instruction constituted fundamental error. We said:

> [W]hen the record reveals blatant violations of basic and elementary principles, and the harm or the potential for harm cannot be denied, we will review an issue which was not properly raised and preserved.

*Id.* In reviewing this case, we hold that no fundamental error occurred for two reasons.

First, the instruction required that the State prove that, when the defendant fired his pistol at Griffin, he was "attempting to kill" him. While "attempting to kill" is not synonymous with "intending to kill," we believe that no significant potential for harm resulted from the substitution of "attempting" for "intending" in this case. As we stated in *Spradlin*, "by definition, there can be no 'attempt' to perform an act unless there is a simultaneous 'intent' to accomplish such act." 569 N.E.2d at 951. Here, by finding that the defendant was attempting to kill Griffin when he shot him, it was logically necessary for the jury to find that he intended to kill him.

■ Secondly, the evidence in this case was that a gunman approached Griffin and shot him in the neck from a distance of inches. The issue at the center of the trial was whether Jackson was the gunman, not whether the gunman intended to kill Griffin by shooting him at such close range. For both of the above reasons, we hold that the giving of that instruction neither constituted a blatant violation of basic and elementary principles nor posed a potential for harm. Thus, the instruction does not require reversal in this case.

Counsel objected to Instructions No. 7, 9, and 10 given by the court. Instruction No. 7 covered a definition of attempt; No. 9 stated that intent to commit a crime may be inferred from surrounding circumstances; and No. 10 told the jury that it could consider an avoidance of arrest as being evidence of guilt.

■ Instructing the jury lies solely within the discretion of the trial court. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 581. An error in an instruction will not warrant reversal unless it is of such a nature that the entire charge of which it is a part misled the jury on the law of the case. *Id.* As we stated in *Fox v. State* (1986), Ind., 497 N.E.2d 221, 225:

> The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.

In *St. John v. State* (1988), Ind., 523 N.E.2d 1353, 1357, we stated:

> A certain amount of repetition is inherent in the nature of jury instructions. The defendant's substantive rights are not violated by instructions which are to some extent repetitive. (Citation omitted)
>
> Instructions become improper only when they "are so repetitious as to place an undue emphasis on a particular point...." (Citation omitted)

■ With regard to Instruction No. 7, Jackson contends it is repetitive of Instruction No. 5 and, as such, it was likely to be most influential with the jury. We do not find that Instruction No. 7 is so repetitious of Instruction No. 5 as to place an undue emphasis on that point. In addition, we do not find that this instruction rendered the charge as a whole incorrect.

■ With regard to Instruction No. 9, Jackson contends that this instruction is repetitive and covered by other instructions and changes the quantum of proof required by creating an exception for proof concern-

ing the element of intent. We fail to see where the instruction is repetitious or an incorrect statement of the law. Clearly a finding of intent can be inferred from the evidence of the circumstances surrounding the commission of a crime and it does not require a direct statement of intent from a defendant.

Jackson further contends that Instruction No. 10 is invasive of the province of the jury by suggesting to the jury that the Court had already made a finding as to the motive and true nature of the conduct of Jackson in the context of the arrest. We note that Jackson has failed to cite any authority for his proposition; thus, it is waived. In addition, the instruction was a correct statement of the law and one similar to it was approved by this Court in *Kiper v. State* (1983), Ind., 445 N.E.2d 1353, 1359. No error is presented by the court's instructions.

## IV. *Motion for Mistrial*

Jackson contends the trial court erred when it took under advisement and then denied his motion for a mistrial. Jackson contends that by not ruling on the motion at the time it was made, counsel had to make certain decisions concerning trial strategy which were to his detriment.

The following occurred during direct examination by the prosecutor of the victim's wife and Jackson's ex-wife.

Q. You had periodic contact with him?
A. Yes.
Q. Oh, did he ever harass you or bother you through the summer of....
A. Well, he was incarcerated.

At this point, Jackson moved for a mistrial. The trial court took the motion under advisement and admonished the jury.

Granting a mistrial is within the trial court's discretion, and great deference is accorded the trial judge on appeal as he is in the best position to gauge the circumstances and the impact upon the jury. *Reno v. State* (1987), Ind., 514 N.E.2d 614, 617. Where the trial court promptly admonishes the jury to disregard what has occurred at trial, it is presumed to cure

error resulting from the admission of improper evidence. *Peters v. State* (1989), Ind., 542 N.E.2d 1340, 1343. The statement here was inadvertent and after the objection was lodged, the prosecutor did not attempt to elicit any more information concerning the incarceration. A declaration of mistrial was not required. The trial court did not abuse its discretion by denying the motion for a mistrial.

## V. *Continuance*

Jackson contends that the trial court erred when it refused to grant a continuance to permit him to recall the victim for additional examination and further contends that he was denied effective assistance of counsel because counsel failed during cross-examination of the victim to question him regarding the description of the perpetrator in the police report.

Counsel for Jackson, at the conclusion of the trial, filed an affidavit. In this affidavit, he stated that the victim testified that the perpetrator of the crime did not have a beard and, later, upon reviewing the police report, counsel learned that the perpetrator was described by someone as having a beard. Counsel then requested a continuance in order to find and recall the victim, but the trial court refused to continue the trial.

Whether to grant or deny a motion for continuance is within the trial court's discretion. This Court will reverse only when the denial constitutes an abuse of discretion supported by the record resulting in prejudice to the accused. *Beverly v. State* (1989), Ind., 543 N.E.2d 1111, 1113.

Upon review of the record, we cannot say the trial court abused its discretion in denying the continuance and that such abuse resulted in prejudice to Jackson. The evidence is that Jackson was well-known to the victim and that the victim identified Jackson by name on the date of the shooting. He was cross-examined extensively about his identification of Jackson. To continue the trial to recall him for additional cross-examination about the variation between the police report notation and his steadfast identification of Jackson as the man who shot him would have added

little to the determination of guilt. The refusal of the trial court to grant such a request for continuance was not an abuse of discretion.

## VI. *Ineffective Trial Counsel*

■ As to the charge that Jackson's trial counsel was ineffective, we disagree. The record reveals that a very thorough, professional defense was presented by Jackson's counsel. Extensive discovery was undertaken. The State's witnesses were vigorously cross-examined and Jackson's alibi witnesses presented his alibi defense. There was never an issue as to whether a gunman shot the victim in the face at close range. The only issue was whether Jackson was the gunman. Not only was the jury presented with the victim's eyewitness testimony, but also with evidence of Jackson's admission to various witnesses that he "shot Darryl." In spite of good advocacy by Jackson's attorney, the jury found that Jackson was the gunman. Jackson received effective assistance of counsel.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN, J., concurs in result.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

Appellant was not present at the Chandler's deposition, but was represented by counsel, who cross-examined Chandler at the deposition. At the time of the deposition and at the time of trial, Chandler was physically unable to attend the trial, and the announced purpose of the deposition was to record her testimony for use at trial in lieu of her live testimony. Upon these bases, the criteria of Trial Rule 32 for admission of Chandler's deposition at appellant's trial in lieu of Chandler's live appearance and live testimony were satisfied.

1. The trial objection: At trial defense counsel objected to admission of the Chandler deposition because he claimed Chandler was not physically unable to attend the trial. Appellant was permitted to address the court in support of this objection and added that Chandler had information which should be heard by the jury and that she should be brought to the trial and subjected to cross-examination about that information. He also stated that his defense would suffer without this opportunity. This objection has a legal basis which is broader than the rule and is in my opinion sufficient to encompass the claim in appellant's brief that the admission of the deposition violated the right of confrontation.

2. The Constitutional right: Article 1, Section 13 grants the accused the right "to meet the witnesses face to face" at the trial. This deposition was part of the trial against appellant, and Chandler was a witness for the State against him. Therefore, it necessarily is to be concluded that appellant had the constitutional right to be personally present at the deposition of Chandler. *Brady v. State* (1991), Ind., 575 N.E.2d 981.

3. Waiver of the right: The waiver of the right to meet the State's witness face to face at trial should be an express, intentional act of the accused with awareness of the nature of that right. *Miles v. State* (1944), 222 Ind. 312, 53 N.E.2d 779. There is no such waiver shown on this record. It should be noted that the State initiated this deposition of its witness, and not the accused. Therefore, the waiver imposed when the accused initiates a deposition is not applicable. *Jones v. State* (1983), Ind., 445 N.E.2d 98.

4. Harmless constitutional error: Chandler testified in her deposition that appellant confessed his crime to her shortly after it took place. Appellant's defense was alibi, and he had several relatives who testified that he was in Cincinnati at the time of the crime. The evidence at trial was very much in conflict. Identification of appellant by the victim was based upon his view of his attacker at night as he approached the car. I am therefore unable to find that the constitutional error occurring at the time the trial court admitted the Chandler

deposition over objection was harmless beyond a reasonable doubt.