**Mitchell SWALLOWS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 03A01–9604–PC–127.**

Court of Appeals of Indiana.

Sept. 30, 1996.

Transfer Granted Dec. 4, 1996.

---

Susan K. Carpenter, Public Defender, Linda G. Nicholson, Deputy Public Defender, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mitchell Swallows appeals from the post-conviction court's denial of his petition for post-conviction relief.

We affirm in part, reverse in part and remand.

### ISSUES

Swallows presents several issues for our review which we consolidate and restate as:

1. Whether the trial court committed fundamental error when it instructed the jury on the elements of attempted murder.[1]

2. Whether double jeopardy principles were violated when the trial court convicted and sentenced Swallows to confinement as well as criminal deviate conduct and rape.

3. Whether double jeopardy principles were violated when both Swallows' rape and criminal deviate conduct charges were enhanced from Class B felonies to Class A felonies due to the use of a handgun during the commission of the crimes.

4. Whether Swallows received the effective assistance of trial and appellate counsel.

### FACTS

On February 5, 1985, Dinah Durham asked Swallows for a ride from her Columbus apartment to Edinburgh to retrieve her purse which she had left at his neighbors' home. Once in Edinburgh, the two went to Swallows' home where Swallows grabbed Durham and demanded sex. Durham refused and Swallows eventually agreed to take her home. The two entered the vehicle parked in the driveway. Swallows then grabbed Durham by the hair and again demanded sex. Durham broke away from Swallows, ran from the vehicle and immediately notified a patrolman of the attack. She then filed charges against Swallows for attempted rape.

Two days later, Swallows forced Doyle Hoskins, at gunpoint, to drive Marvin McCall and him to Durham's apartment. Once they arrived at the apartment, Susie Carmichael, Durham's roommate, answered the door. Carmichael told Swallows to leave. Despite her demands, the three men entered the living room of the apartment where Carmichael and Tom Ellis, a friend, had been sitting. Carmichael then went into the bedroom, awakened Durham and told her that Swallows wanted to speak with her. Durham went into the living room and told Swallows to leave. Swallows pulled out his gun and demanded that Durham drop the attempted rape charges. She agreed to drop the charges the next morning and begged Swallows to leave. However, Swallows did not believe that she would drop the charges. He then forced Durham and Carmichael into the bedroom. While holding the gun on Durham, he pulled down his pants and ordered her to perform oral sex on him, but Durham refused. Swallows told McCall to put Carmichael and Ellis into the closet and McCall complied with that order. While all parties were in the bedroom, Hoskins escaped from the apartment and drove away.

Swallows next ordered Durham to remove all of her clothing. She complied while Swallows handed the gun to McCall. Swallows attempted to perform anal intercourse, but failed and he then forced Durham to engage in vaginal intercourse. After raping Durham, Swallows took the gun from McCall and shot Durham in the head. Durham fell forward and Swallows shot her again in the back of the neck. Swallows then grabbed Carmichael from the closet, dragged her by the hair into the living room and beat her with a piece of broken bedpost. After Swallows and McCall left the apartment, Durham dragged herself down the stairs to a neighbor's apartment. The neighbor called the police and an ambulance.

Swallows was tried by jury on November 13, 1989, and the jury found him guilty of two

---

1. We need not consider whether the Informations for Attempted Murder adequately informed Swallows of the charges against him because our decision on this issue renders the matter moot.

counts of attempted murder, four counts of criminal confinement, one count of attempted criminal deviate conduct and one count of rape. The court sentenced Swallows to 50 years for each of the attempted murder convictions; 20 years for each of the four confinement convictions; 50 years for his attempted criminal deviate conduct conviction; and 50 years for the rape conviction. The attempted murder convictions were ordered to be served consecutively; the four confinement convictions were to be served concurrent with one attempted murder conviction while the attempted criminal deviate conduct and rape convictions were ordered to be served concurrent with the other attempted murder conviction for a total executed term of 100 years.

This court upheld Swallows' convictions on direct appeal. *Swallows v. State*, 03A01–9004–CR–137, 566 N.E.2d 1108 (Ind.Ct.App. 1991). Swallows filed a petition for postconviction relief which was denied by the trial court. Then, on November 13, 1991, Swallows filed a petition to reconsider and reinstate the petition for post-conviction relief, which the court granted. Swallows amended his petition on March 2, 1995, and the court held an evidentiary hearing. The court denied Swallows' petition for post-conviction relief on December 19, 1995. Swallows appeals from that decision.

## DISCUSSION AND DECISION

### Standard of Review

■ The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at trial. *Grey v. State*, 553 N.E.2d 1196, 1197 (Ind.1990). Thus, post-conviction relief is not a "super appeal." *Collier v. State*, 572 N.E.2d 1299, 1301 (Ind.Ct.App.1991), *trans. denied.* Failure to raise error on direct appeal results in waiver of that issue on post-conviction review unless the error was fundamental. *See e.g., Simmons v. State*, 642 N.E.2d 511 (Ind.1994); *Holleman v. State*, 641 N.E.2d 638, 640–41 (Ind.Ct.App.1994), *trans. denied.* To qualify as "fundamental," the error must be a substantial blatant violation of basic principles rendering the trial unfair to the defendant. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind.

1994). A claim of fundamental error is not viable without a showing of grave peril and the possible effect on the jury's decision. *Isom v. State*, 651 N.E.2d 1151, 1152 (Ind. 1995). The appellant bears the burden of proving by a preponderance of the evidence that the alleged error occurred and that the error was fundamental in nature. Ind. Post–Conviction Rule 1 § 5. We reverse only if the petitioner shows that the evidence is without conflict and leads only to a conclusion opposite that reached by the post-conviction court. *St. John v. State*, 529 N.E.2d 371, 374 (Ind.Ct.App.1988), *trans. denied.*

### Issue One: Jury Instruction

■ Swallows contends that his fundamental right to due process was violated when the trial court erroneously instructed the jury on the elements of attempted murder. We must agree.

The instructions presented to the jury stated:

Counts I and II—The crime of attempted murder is defined by the statute of the State as follows:

A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. A person who knowingly or intentionally kills another human being commits Murder, a felony. An attempt to commit murder is a Class A Felony.

To convict the defendant, the State must have proved each of the following elements. The defendant:

1. Knowingly or intentionally

2. Engaged in conduct to kill another human being and

3. That the conduct was a substantial step toward the commission of the crime of murder.

If the State fails to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty. If the State did prove each of these elements beyond a reasonable doubt, you should find

the defendant guilty of Count[s] I and II, Attempted Murder, Class A felonies.

Record at 506.

In *Zickefoose v. State*, 270 Ind. 618, 388 N.E.2d 507 (1979), our supreme court held that one of the necessary elements of attempted murder is that "the defendant must have been acting with a specific intent to commit the crime." *Id.* at 622, 388 N.E.2d at 510. "Simply stated, in order to attempt to commit a crime, one must intend to commit that crime while taking a substantial step toward the commission of the crime." *Spradlin v. State*, 569 N.E.2d 948, 951 (Ind. 1991). An instruction which correctly lists the elements of attempted murder, therefore, requires an explanation that the act must have been performed with the specific intent to kill. *Smith v. State*, 459 N.E.2d 355, 358 (Ind.1984). Instructing a jury with a list of elements which suggests that it may convict on a lesser mens rea, such as "knowingly," constitutes error. *Beasley v. State*, 643 N.E.2d 346, 348 (Ind.1994).

In this case, the jury instructions improperly listed the elements of attempted murder. Under the language of the instruction, the jury could have concluded that because Swallows "knowingly" fired a gun at another, he was guilty of attempted murder. This is in direct conflict with supreme court precedent which requires the State to prove that Swallows possessed an intent to kill when taking a substantial step toward the crime of murder. *See Clark v. State*, 668 N.E.2d 1206 (Ind. 1996) (conviction cannot stand when instruction for attempted murder allows conviction on "knowingly" and does not require "intent to kill"); *Beasley*, 643 N.E.2d at 348 (attempted murder instruction must include required mens rea of specific intent).

Still, Swallows failed to object to the attempted murder instruction at trial, and the issue is waived unless he can show that the error constituted fundamental error. The State argues that the post-conviction court correctly concluded that the attempted murder instruction given in this case is analogous to the one allowed in *Jackson v. State*, 575 N.E.2d 617 (Ind.1991). In *Jackson*, the supreme court held that the attempted murder jury instruction did not constitute fundamen-

tal error. *See also Allen v. State*, 575 N.E.2d 615 (Ind.1991), *cert. denied*, 510 U.S. 1132, 114 S.Ct. 1106, 127 L.Ed.2d 417 (1994). In reaching its conclusion, the supreme court considered two factors. First, the jury instruction included as an element that the State must prove the defendant "attempted to commit the crime of murder by *attempting to kill*." *Id.*; *Pierce v. State*, 579 N.E.2d at 1317, 1319 (Ind.Ct.App.1991), *trans. denied*. The court reasoned that "no harm resulted from the substitution of 'attempting' for 'intending' in this case" because by definition, there can be no "attempt" to perform an act unless there is a simultaneous "intent" to accomplish such act. *Jackson*, 575 N.E.2d at 621. Secondly, the issue at the center of the trial was the identity of the gunman and not his intent. *Id.* The court held that for both reasons the instruction did not constitute fundamental error. *Id.*

The instruction in this case does not contain the "attempting to kill" language found in *Jackson*. Rather, it specifically permits Swallows to be convicted if the jury finds he "knowingly or intentionally engaged in conduct to kill another human being." Record at 506. Here, the post-conviction court denied relief based on this instruction because the central issue at trial was the identity of the perpetrator rather than Swallows' intent. However, this court has held that there is fundamental error unless *both* reasons relied upon by the supreme court in *Jackson* are present. *Yeagley v. State*, 670 N.E.2d 358, 360 (Ind.Ct.App.1996); *Channell v. State*, 658 N.E.2d 925, 929 (Ind.Ct.App.1995) (instruction did not contain "attempting to kill" language and, thus, fundamental error occurred), *trans. denied*. In this case, while the identity of the perpetrator rather than his intent was the central issue at trial, just as in *Channell*, the instruction here did not include the "attempting to kill" language. Thus, Swallows' convictions for attempted murder must be vacated.

■ Although supreme court precedent requires that we reverse Swallows' attempted murder convictions, we express our dissatisfaction with the present state of the law which results in post-conviction relief where the trial court instructed the jury by tracking

the language of the statute defining murder as "knowingly or intentionally" killing another human being. IND. CODE § 35–42–1–1. To ameliorate such harsh results, the supreme court has created an exception to the general rule, in which, under certain circumstances, the failure to give a specific intent instruction does not amount to fundamental error. *See Jackson*, 575 N.E.2d 617. However, when the two factors identified in *Jackson* are not present, we are compelled to conclude that fundamental error exists.

The unfairness of this rule, when applied in a case of this kind, is readily apparent. Here, in retaliation for the victim's prosecution of him for attempted rape, Swallows entered the victim's home, brutally raped her, and attempted to execute her by shooting her twice in the head. It is incredible that a defendant, who twice shoots a human being in the head at close range, would raise the issue of intent. In fact, at trial, Swallows challenged only the identity of the perpetrator. Under these circumstances, we do not believe that the trial court's failure to instruct the jury on specific intent actually deprived Swallows of his fundamental right to a fair trial as we find it inconceivable that a reasonable jury could have convicted Swallows on a lesser mens rea. Thus, we are convinced that our supreme court should reexamine its decisions which hold in postconviction attempted murder cases that the failure to instruct on specific intent constitutes fundamental error even where, as here, the defendant's intent to kill cannot be seriously disputed and no reasonable juror could have concluded that the defendant did not intend to kill the victim.

### Issue Two: Double Jeopardy— Criminal Confinement

Swallows contends that double jeopardy principles were violated when he was convicted of the criminal confinement as well as attempted criminal deviate conduct and rape of Durham. Specifically, Swallows argues that the force used to support a charge of confinement was no more than was necessary to carry out the other acts. We disagree.

 Swallows failed to raise this issue on direct appeal. However, the issue is not waived because a double jeopardy violation, if

shown, constitutes a · fundamental error. *Channell*, 658 N.E.2d at 931; *Madden v. State*, 656 N.E.2d 524, 526 (Ind.Ct.App.1995), *trans. denied.* For the purposes of double jeopardy, two offenses are the same when the same act constitutes a violation of two distinct statutory provisions which do not require proof of an additional fact. *Wethington v. State*, 560 N.E.2d 496, 506 (Ind.1990). Double jeopardy analysis does not end with an evaluation and comparison of the statutory provisions. *Id.* at 507. Rather, the factual bases alleged by the State in the information or indictment, and upon which the charges are predicated, must also be examined. *Id.*

 Where the crime of rape is charged as forcible rape, the charge necessarily includes the crime of confinement to the extent force, or threat of force, effectuates the rape. *Webster v. State*, 628 N.E.2d 1212, 1214 (Ind.1994); *Griffin v. State*, 583 N.E.2d 191, 194 (Ind.Ct.App.1991). The same is true for attempted criminal deviate conduct. *Salone v. State*, 652 N.E.2d 552, 560–61 (Ind.Ct.App.1995), *trans. denied.* Any other confinement of the victim beyond that inherent in the force used to effectuate the rape or the attempted criminal deviate conduct constitutes a violation of the confinement statute apart from the violation inherent in the other offenses. *Webster*, 628 N.E.2d at 1214; *Salone*, 652 N.E.2d at 561.

 Here, the evidence presented at trial shows that Swallows refused to leave the apartment after Durham asked him to do so. Record at 732. Swallows then threatened Durham with his gun and told her to drop the charges she had filed against him. Record at 737. Durham repeatedly told Swallows that she would drop the charges. Record at 738—41. Swallows did not believe her and then backed Durham and her roommate, Carmichael, into the bedroom. Record at 740. Carmichael and Ellis were ordered into the closet. Record at 826. Swallows then demanded that Durham remove her clothing. Record at 826. This evidence reveals confinement beyond that necessary to effectuate the rape or the attempted criminal deviate conduct. Accordingly, Swallows' convictions

for criminal confinement, rape and attempted criminal deviate conduct do not violate double jeopardy.

### Issue Three: Double Jeopardy—
### Use of Weapon

Swallows also contends that the enhancement of his rape and attempted criminal deviate conduct charges from Class B felonies to Class A felonies violated double jeopardy. Specifically, he asserts that his convictions and sentences for these offenses were all elevated to more serious felonies by the same element: the fact that he was armed with a handgun. Again, we cannot agree.

The prohibition against double jeopardy is violated when the defendant is convicted and sentenced for two separate crimes which are based upon the same act or the same conduct. *Derado v. State,* 622 N.E.2d 181, 183 (Ind.1993). However, double jeopardy is not violated by elevating the level of multiple felony charges on the basis that the defendant was armed with a deadly weapon while committing separate and distinct crimes. *Lingler v. State,* 635 N.E.2d 1102, 1105 (Ind.Ct.App.1994), *aff'd in part* and *rev'd on other grounds.* As we discussed in Issue Two, the evidence shows that Swallows confined Durham when he held her at gunpoint and forced her into her bedroom. At that point, Swallows attempted to perform deviate sexual acts upon her. When his attempts failed, Swallows raped Durham. Swallows committed the distinct crimes of confinement, deviate sexual conduct and rape, all while armed with a handgun. Because these were separate crimes committed with the use of a deadly weapon, the prohibition against double jeopardy was not violated when the crimes were elevated to more serious felonies. Thus, Swallows was not placed in double jeopardy.

### Issue Four: Effective Assistance of
### Trial and Appellate Counsel

Finally, Swallows asserts that he did not receive the effective assistance of trial and appellate counsel. Specifically, he argues that each error presented in this appeal was apparent on the face of the record and should have been raised by counsel at trial and on direct appeal. We disagree.

When this court reviews a claim of ineffective assistance of counsel, we measure counsel's performance against a "reasonably effective assistance" standard. *Burr v. State,* 492 N.E.2d 306, 308 (Ind.1986). The defendant is required to show strong and convincing evidence to overturn the presumption of competence. *Id.* We initially decide whether the acts or omissions of counsel fell below reasonable professional standards. *Sparks v. State,* 499 N.E.2d 738, 739 (Ind.1986). We then determine whether the acts or omissions prejudiced the defendant. *Sulie v. State,* 522 N.E.2d 380, 384 (Ind. 1988), *cert. denied,* 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1979). We look to the totality of the evidence and ask whether there is a reasonable probability that the outcome would have been different, but for counsel's errors. *Wine v. State,* 637 N.E.2d 1369, 1378 (Ind.Ct.App.1994), *trans. denied.* A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

We note that, as a general rule, ineffective assistance of counsel is an issue known and available at the time of the direct appeal. *Montano v. State,* 649 N.E.2d 1053, 1057 (Ind.Ct.App.1995), *trans. denied.* Here, trial and appellate counsel were different, and as appellate counsel had the first opportunity to present the issue of ineffective assistance of trial counsel, his failure to do so will generally be held a waiver of that issue. *See Id.* Swallows raises ineffective assistance of appellate counsel and, thus, we will address the issue of trial counsel's performance on the merits. *See Wine,* 637 N.E.2d at 1378. When reviewing a claim of ineffective assistance of appellate counsel we determine whether appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel as error on appeal, and whether appellate counsel failed to raise on appeal error that was properly preserved at trial. *Id.*

To establish the ineffective assistance of counsel, the defendant must prove that he was prejudiced by counsels' acts or

omissions. *Sulie*, 522 N.E.2d at 384. Assuming that the conduct of both trial and appellate counsel fell below a reasonable standard of care, Swallows cannot show that he was prejudiced by counsels' acts or omissions. As we have discussed in the previous issues, double jeopardy principles were not violated and his convictions for those offenses stand. Further, Swallows' attempted murder convictions have been vacated in this appeal and, thus, Swallows was not prejudiced by counsel's failure to object to the jury instructions at trial, or by appellate counsel's failure to raise that issue on direct appeal. Because Swallows cannot establish prejudice, his claims of ineffective assistance of counsel must fail.

Affirmed in part, reversed in part and remanded.

ROBERTSON and BAKER, JJ., concur.