Vernon L. CASEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 10A04–9608–CR–336.

Court of Appeals of Indiana.

Dec. 16, 1997.

Jeffrey D. Stonebraker, Chief Public Defender, Vicki L. Carmichael, Assistant Public Defender, Jeffersonville, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, John B. Herriman, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Defendant–Appellant Vernon L. Casey appeals his conviction of aggravated battery, a Class B felony.[1]

We affirm.

1. Ind.Code 35–42–2–1.5.

### ISSUES

Casey raises three issues, which we restate as:

1. Whether the trial court erred in denying Casey's motion for mistrial after the court excused a juror and seated an alternate juror.

2. Whether the evidence was sufficient to support Casey's conviction of aggravated battery.

3. Whether the trial court failed to consider evidence of mitigating circumstances in sentencing Casey.

### FACTS AND PROCEDURAL HISTORY

On August 9, 1995, David Wrighthouse was driving through the Jeffersonville Housing Area when his vehicle was hit by a ceramic plate thrown by Casey. Wrighthouse stopped and exited his car. Casey immediately walked up to Wrighthouse and punched him in the face, knocking him to the ground. As Wrighthouse lay on the ground, Casey and others began kicking and stomping his head and body. After others stopped kicking and stomping Wrighthouse, Casey and Andrew Williams IV continued.

Wrighthouse began having seizures in the street, and someone called for emergency service. Wrighthouse was transported to the major trauma center at a local hospital. He had a broken nose, multiple fractures to the bones underlying his face, numerous deep cuts, and swelling of the brain. He remained in a coma for two weeks after the beating, and would probably have died without the immediate medical care. He lost the full use of his left arm and leg and has had to relearn simple tasks, such as breathing on his own and eating.

Casey, Williams, and others were arrested for the attack on Wrighthouse. Casey was tried along with Williams and was convicted of the offense of aggravated battery. He now appeals.

### DISCUSSION AND DECISION

I. MISTRIAL

■ On the second day of trial, one of the jurors expressed concerns about his ability to

sit in judgment in the case. Upon questioning from counsel and the trial court, he stated that his "system was all messed up" and that he had formed an opinion as to the guilt or innocence of the defendants which he could not set aside. The trial court excused the juror. Casey moved for a mistrial, stating

> I'm concerned about the fact that the remainder of the Jury panel is going to see that for some reason the sole black Juror has been suddenly excused and what effect that might play in their listening to and considering the testimony and evidence that's presented to them. I've heard the very careful questioning of the Court. I still did not learn what factual information upon which [the Juror] changed and based an opinion to form a conclusion as to guilt or innocence in this case. It seems to me that we heard one witness so far in this trial who merely related the events of calling 9–1–1 in either of the Defendants, so that it was therefore, I do not believe it could have been based on the evidence and, in fact, I don't think there was any factual reason for his opinion. Therefore, I think, move for a mistrial.

(R. 239–40). The trial court denied Casey's motion and later admonished the jury not to speculate as to the cause of the juror's excusal.

Casey contends that the trial court abused its discretion in denying his motion for mistrial. Specifically, he argues that he was placed in substantial peril because the remaining jurors must have reached the "logical inference" that the only African–American juror was excused because he knew or had learned of the defendants' involvement in the attack on Wrighthouse. He further argues that the excusal "cast a shadow over the presumption of innocence to which the defendants were entitled." Appellant's Brief at 11.

■ This court reviews a trial court's decision to excuse and replace a juror only for an abuse of discretion. *Ferry v. State,* 453 N.E.2d 207, 213 (Ind.1983). A trial court may exercise its discretion and replace any juror who is experiencing a great deal of anxiety. *Burtley v. State,* 476 N.E.2d 835,

836–37 (Ind.1985). A trial court may also exercise its discretion and replace any juror who cannot perform his duty. Ind.Trial Rule 47(B).

■ The grant or denial of a motion for mistrial is left to the sound discretion of the trial court and will be disturbed only upon a showing of an abuse of that discretion. *Jackson v. State,* 518 N.E.2d 787, 789 (Ind. 1988). Mistrial is an extreme remedy and should only be granted when nothing else can rectify the situation. *Small v. State,* 632 N.E.2d 779, 784 (Ind.Ct.App.1994), *trans. denied.*

Here, the trial court did not abuse its discretion in excusing and replacing the juror. Although the exact cause of the juror's "messed up" system was not known, it was apparent that the anxiety of serving as a juror was a contributing factor. It was further apparent that the juror was unable to be impartial, as he had already determined whether the defendant was guilty or not guilty and could not set that determination aside.

■ Furthermore, the trial court did not err in denying Casey's motion for mistrial. Any possible negative effect of the juror's excusal and replacement was offset by the trial court's admonishment. *See Peters v. State,* 542 N.E.2d 1340, 1343 (Ind.1989) (stating that an admonishment is presumed to be curative).

## II. SUFFICIENCY

■ As noted above, the State presented evidence that Casey and others hit, kicked, and stomped Wrighthouse. The State also presented evidence that Wrighthouse almost died from injuries received in the attack and that he suffered protracted loss or impairment of mental functions.

Casey concedes that the evidence was sufficient to support a conviction of battery under Ind.Code 35–42–2–1. He further concedes that the evidence was sufficient to support a conviction of aggravated battery under Ind.Code 35–42–2–1.5, which states that a person commits aggravated battery when he knowingly or intentionally inflicts

injury that "creates a substantial risk of death or causes serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ" of another person. However, he contends that the evidence was insufficient to support his conviction of aggravated battery, as the State did not establish which of the attackers caused the life-threatening injuries to Wrighthouse. He further contends that he cannot be held responsible for the actions of the other attackers because the State failed to allege a "conspiracy or common plan...." Appellant's Brief at 12.

In *Tynes v. State,* 650 N.E.2d 685, 687 (Ind.1995), our supreme court addressed the contention now raised by Casey. In *Tynes,* the victim walked past a pickup truck containing the defendant and three other people, with a fifth person standing nearby. One of the group asked the victim's name and then stated, "I know what you did to my cousin." *Id.* at 686. The defendant reached for a shotgun, and the victim began running. The defendant and another person shot the victim, who later died. Even though the State's evidence indicated that the shot which killed the victim was not from the defendant's gun, the jury found the defendant guilty of murder. On appeal, the defendant contended that the evidence was insufficient to support his murder conviction. Our supreme court held that the evidence did indicate that the wounds inflicted by the defendant contributed to the victim's death. *Id.* at 687. The court further held that even if the defendant had not fired the "killing shot," he still would be guilty of murder. *Id.* Specifically, the court held that "[i]t is not necessary for the State to show that a defendant was a party to a preconceived scheme; it must merely demonstrate concerted action or participation in an illegal act." *Id.* (citing *Bigbee v. State,* 173 Ind.App. 462, 364 N.E.2d 149, 155 (1977)).

The holding in *Tynes* is consistent with our supreme court's holding in *Simmons v. State,* 262 Ind. 300, 315 N.E.2d 368 (1974). In *Simmons,* the defendant and Jimmy Ray Cambron were drinking alcohol with the victim. The victim said something which angered the defendant, and the defendant struck the victim in the mouth and kicked him in the chest. As the victim rolled out of his chair onto the floor, the defendant went to another room and took some of the victim's personal property. Meanwhile, Cambron struck the victim about the head numerous times with a meat tenderizer. The defendant was convicted of murder, and he appealed. On appeal, he contended that he did not kill the victim "since medical testimony disclosed that [the victim] died from the blows to his head of the meat tenderizer wielded by Cambron." *Id.* 315 N.E.2d at 369. He also contended that he could not be held responsible for Cambron's actions because there was "absolutely no evidence of any overt act or words from which it can be presumed that [the defendant] and Cambron confederated to commit any act." *Id.* Our supreme court affirmed the defendant's conviction. In doing so, it noted that "mere concerted action or participation in the illegal acts is sufficient." *Id.*

In the present case, the State established that Casey committed a battery upon Wrighthouse. The State also established that Wrighthouse suffered life-threatening injuries or protracted loss or impairment of a function of a bodily member. The State further established that the joint actions of Casey and the others caused the injuries. Under both *Tynes* and *Simmons,* the State presented sufficient evidence to support Casey's conviction of aggravated battery.

## III. SENTENCING

After a sentencing hearing, Casey was sentenced to ten years imprisonment with ten years added for aggravating circumstances. Five years of the sentence were suspended, with Casey to be on probation.

Casey contends that the trial court erred in not acknowledging the presence of certain statutory mitigators in sentencing him. He notes that the trial court mentioned specific aggravating circumstances but did not find "any mitigating circumstances in these particular cases." (R. 955). Casey asserts that the trial court must have overlooked the statutory mitigators.

Trial courts are granted broad discretion in imposing sentences, and we will reverse only for an abuse of that discretion. *Geralds v. State,* 647 N.E.2d 369, 373 (Ind.Ct. App.1995), *trans. denied.* A finding of mitigating circumstances is not mandatory, and the court is not obligated to explain why it has not chosen to make a finding of mitigation. *Avance v. State,* 567 N.E.2d 1149, 1154 (Ind.1991), *overruled on other grounds, Wright v. State,* 658 N.E.2d 563 (Ind.1995). However, the trial court's failure to find significant mitigating circumstances which are clearly supported by the record may give rise to the belief that they were overlooked and not properly considered. *Jones v. State,* 467 N.E.2d 681, 683 (Ind.1984); *Dockery v. State,* 504 N.E.2d 291, 297 (Ind.Ct.App.1987). A thorough and specific sentencing statement is necessary to facilitate a meaningful appellate review of the sentence. *Henderson v. State,* 489 N.E.2d 68, 72 (Ind.1986).

In the present case, the record shows that Casey and his counsel asked the trial court to consider the following mitigators: (1) that the offense resulted from circumstances unlikely to reoccur; (2) that Wrighthouse provoked the offense by calling Casey and others "niggers"; (3) that incarceration would cause undue hardship to Casey's daughter; and (4) that Casey was not given needed counseling or guidance after his mother deserted him as a young teen.

The trial court was free to exercise its discretion in determining whether Casey would again commit the offense of aggravated battery and whether the circumstances surrounding the aggravated battery upon Wrighthouse would reoccur. The trial court noted that Casey had a history of criminal activity, that Wrighthouse was almost beaten to death, and that Casey's presence in the Jeffersonville Housing Area was in violation of the probation that Casey began just seven days before the aggravated battery occurred. It is apparent that the trial court believed that this act of aggravated battery could reoccur. The trial court did not abuse its discretion in arriving at this conclusion.

The trial court was free to determine that it did not believe that Wrighthouse, a lone white man in a black community, actually directed a racial slur at Casey and the other attackers. The court was also free to determine that even if the slur was made, it was not sufficient to warrant the offense committed by Casey.

The trial court was not required to find that incarceration would cause undue hardship to Casey's daughter where no details of the relationship between the two were presented. Furthermore, the trial court was not required to find that Casey's turbulent upbringing was a significant mitigating factor in a case involving serious violence.

Our review of the record reveals that the trial court put much thought into the sentencing of Casey and that it articulated the reasons for enhancing Casey's sentence. We conclude that the trial court did not abuse its discretion in finding that there were no mitigating circumstances.

## CONCLUSION

The trial court properly denied Casey's motion for mistrial after the court replaced a juror who was ill and could no longer render a fair and impartial verdict. Casey's conviction of aggravated battery was supported by the evidence. Furthermore, the trial court properly sentenced Casey on his conviction of aggravated battery.

Affirmed.

CHEZEM and HOFFMAN, JJ., concur.