**Freddie CONCEPCION, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 49A02–0303–PC–183.

Court of Appeals of Indiana.

Oct. 14, 2003.

Transfer Denied Dec. 9, 2003.

Susan K. Carpenter, Public Defender of Indiana, Victoria Christ, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Freddie Concepcion appeals the denial of his petition for post-conviction relief. We affirm.

### Issue

The sole issue we address today is whether the post-conviction court erred in concluding that Concepcion's appellate counsel was not ineffective.

### Facts

The short version of the facts underlying this appeal are that on July 27, 1986, Concepcion was involved in a series of criminal events including robbery, kidnapping, the killing of one individual, and a gunfight between Concepcion and his confederates and police. The more detailed facts can be found in our supreme court's opinion on Concepcion's direct appeal, *Concepcion v. State*, 567 N.E.2d 784, 786–87 (Ind.1991). In the end, Concepcion was charged with and convicted of multiple conspiracy, kidnapping, robbery, murder, and attempted murder counts and was sentenced to an aggregate term of 230 years.

In February 2000, Concepcion filed a pro se petition for post-conviction relief, which was amended by counsel on July 18, 2002. The amended petition only challenged Concepcion's two convictions for attempted murder, specifically with respect to how the jury was instructed on those two counts. After conducting an evidentiary hearing, on January 21, 2003, the post-conviction court entered findings and conclusions that Concepcion had received effective assistance of appellate counsel and denying post-conviction relief. He now appeals.

### Analysis

 Concepcion's claim that he is entitled to post-conviction relief centers on the argument that the trial court erroneously instructed the jury on the mens rea for attempted murder. He presents this argument both as a freestanding fundamental error claim and as an ineffective assistance of appellate counsel claim. Our

supreme court has made it quite clear, however, that "[i]t is wrong to review [a] fundamental error claim in a post-conviction proceeding." *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002). "[C]omplaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Id.* The *Sanders* court criticized this court for addressing a claim of instructional error under both fundamental error and ineffective assistance standards, concluding that ineffective assistance was the only proper analysis in a post-conviction proceeding; the sole reason transfer was granted in the case was to make that distinction, as our opinion was otherwise summarily affirmed. *See id.* Because Concepcion does not argue that his claim of instructional error was demonstrably unavailable at the time of trial or direct appeal, we will only review this claim in the context of his ineffective assistance of appellate counsel argument.

 A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Wesley v. State,* 788 N.E.2d 1247, 1250 (Ind.2003). A petitioner appealing from the denial of post-conviction relief stands in the position of one appealing a negative judgment. *Id.* As such, the petitioner must convince the court on appeal that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Id.*

 Defendants are constitutionally entitled to the effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985); *Stevens v. State,* 770 N.E.2d 739, 760 (Ind.2002), *cert. pending.*

Appellate ineffectiveness claims are evaluated under the *Strickland* standard of conduct falling below professional norms and resulting in prejudice such that our confidence in the outcome is undermined. As for challenges to an appellate counsel's strategic decision to include or exclude issues, courts should be particularly deferential "unless such a decision was unquestionably unreasonable." To prevail on a claim of ineffective assistance of appellate counsel, a defendant must "show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." Deciding which issues to raise on appeal is one of the most important strategic decisions of appellate counsel. Appellate counsel is not deficient if the decision to present "some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." Even if counsel's choice is not reasonable, to prevail, petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different. An appellate ineffectiveness claim challenging the quality of counsel's actual presentation of a claim must "overcome the strongest presumption of adequate assistance." If the claimed issues were presented by appellate counsel and analyzed by an appellate court, relief will only be afforded when the "appellate court is confident it would have ruled differently."

*Stevens,* 770 N.E.2d at 760 (internal citations omitted). "Moreover, appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the existing law." *Trueblood v. State,* 715 N.E.2d 1242, 1258 (Ind.1999), *cert. denied,* 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000).

■■■ At trial, the trial court gave the jury attempted murder instructions that provided:

> An attempt to commit a crime is defined as follows:
>
> "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime."
>
> Murder under the law is defined as follows:
>
> "A person who knowingly or intentionally kills another human being commits murder."
>
> \* \* \* \* \* \*
>
> To convict the defendant [of attempted murder] the State must have proved each of the following elements:
>
> The defendant:
>
> 1) knowingly and intentionally attempted to kill Wayne Lanum, Jr. by engaging in conduct, to-wit:
> 2) shooting at and toward Wayne Lanum, Jr. [and Robert Green], with a deadly weapon, and
> 3) that such conduct constituted a substantial step towards the commission of the crime of Murder.

App. pp. 431, 459. The jury was also given the definitions of "knowingly" and "intentionally." App. p. 435.

The trial court refused to give the following instructions submitted by Concepcion's trial counsel:

Instruction Number 1

> The crime charged in this case is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the State must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.
>
> An act or a failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

Instruction Number 2

> An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.
>
> The purpose of adding the word "knowingly" is to insure that no one will be convicted for an act done because of mistake, or accident, or other innocent reason.
>
> As stated before, with respect to an offense such as charged in this case, specific intent must be proved beyond reasonable doubt before there can be a conviction.

App. pp. 480–81.

On direct appeal, appellate counsel argued the trial court had erred in refusing to give these instructions. On this issue, the brief cited the general standards applicable to the giving of instructions. It then concluded, without citation to authority:

> The defendant-appellant would argue that taken as a whole, the trial court's final instructions as given to the jury do not adequately cover the law and therefore did not properly inform and instruct the jury. Therefore, it is the position of

the defendant-appellant that the court committed reversible error in improperly instructing the jury.

Post–Conviction Ex. B, p. 37. Consistent with the brevity of this argument, the full extent of the supreme court's analysis of it was:

Instruction No. 1 was on the subject of intent. Instruction No. 2 defined the word "knowingly" and instructed the jury on its purpose.... An examination of the court's instructions which were given to the jury reveals that the matters contained in Tendered Instructions 1 and 2 were covered by the trial court.

*Concepcion,* 567 N.E.2d at 789.

 Forty days after Concepcion's opinion was handed down, the supreme court issued its decision in *Spradlin v. State,* 569 N.E.2d 948 (Ind.1991). That case "established that it was reversible error for a trial court to instruct a jury that a 'knowing' mens rea was sufficient to establish guilt of attempted murder." *Williams v. State,* 737 N.E.2d 734, 736 (Ind.2000). Rather:

an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing.

*Spradlin,* 569 N.E.2d at 950. "[A]ttempted murder instructions must include the required mens rea of specific intent." *Beasley v. State,* 643 N.E.2d 346, 348 (Ind.1994). "Instructing the jury with a list of elements which suggests that it may convict on a lesser mens rea, such as 'knowingly,' constitutes error." *Id.* The attempted murder instructions given in Concepcion's case appear to run afoul of *Spradlin* and its progeny, in that they fail

to refer to specific intent to kill and also suggest that the lesser mens rea of "knowingly" may suffice.

However, to answer whether Concepcion's appellate counsel was ineffective for either failing to raise a direct claim of error with respect to the trial court's attempted murder instructions or for failing to raise it adequately, we must look to the available precedent at the time Concepcion's appeal was pending. *Stevens,* 770 N.E.2d at 760. In that respect, it is fair to say that the rules regarding attempted murder instructions prior to *Spradlin* were unclear. In *Zickefoose v. State,* 270 Ind. 618, 388 N.E.2d 507 (1979), our supreme court analyzed the then-new general attempt statute. It concluded that there are two fundamental elements of any attempt to commit a crime: "First, the defendant must have been acting with a specific intent to commit the crime, and second, he must have engaged in an overt act which constitutes a substantial step toward the commission of the crime." *Id.* at 622, 388 N.E.2d at 510. This opinion did not address jury instruction requirements.

In *Smith v. State,* 459 N.E.2d 355 (Ind. 1984), our supreme court disapproved of an instruction stating the defendant could be found guilty of attempted murder if the jury found he "knowingly ... [e]ngaged in conduct that constituted a substantial step toward the commission of Murder." *Id.* at 357. The court stated, "An instruction which correctly sets forth the elements of attempted murder requires an explanation that the act must have been done with the specific intent to kill." *Id.* at 358. In *Abdul–Wadood v. State,* 521 N.E.2d 1299 (Ind.1988), the following instruction was held to be fundamentally erroneous:

To sustain the charge of attempted murder, the State must prove the following propositions:

First: That the Defendant knowingly engaged in conduct against [the victim].

Second: That the Defendant's conduct against [the victim] constituted a substantial step toward the commission of the crime of murder.

*Id.* at 1300. The stated reason for this holding was that it allowed a jury to convict of attempted murder if it found the defendant deliberately engaged in conduct that resulted in a risk of death, even if there was no appreciation of that risk at the time of the conduct. *Id.* at 1301.

In *Jackson v. State,* 544 N.E.2d 853 (Ind.1989), our supreme court disapproved of an instruction providing the defendant could be convicted of attempted murder if he "knowingly ... attempted to kill" the victim, for the express reason that it failed to define what constituted an attempt, i.e. that the defendant took a substantial step toward the intended killing. *Id.* at 854. However, the *Jackson* court also expressly stated, "it is entirely correct to use the word knowingly as well as intentionally, to describe the mens rea element of the crime of attempted murder." *Id.*

To that end, our supreme court affirmed several attempted murder cases in the 1980's where instructions were given referring to a "knowing" mens rea and not using the precise words "specific intent to kill." Thus, in *Santana v. State,* 486 N.E.2d 1010 (Ind.1986), our supreme court approved the following attempted murder instruction:

To convict the defendant of the crime of attempted murder, the State must have proved the following elements:

1. the defendant knowingly or intentionally
2. took a substantial step to accomplish
3. a knowing or intentional killing of another human being.

*Id.* at 1011. The *Santana* court asserted that the instruction in *Smith* was erroneous because it focused on the mens rea for the proscribed conduct (engaging in a substantial step toward the commission of murder) without providing the necessary mens rea for the proscribed result itself (murder). *Id.* The opinion stated that it was "entirely incorrect" to read *Smith* as admonishing against using the word "knowingly" to describe the mens rea element of attempted murder. *Id.*

In *Worley v. State,* 501 N.E.2d 406 (Ind.1986), the jury was instructed on the language of the general attempt statute, the murder statute, and definitions of "knowingly" and "intentionally," as was Concepcion's jury. It was also given an instruction on the necessary elements of attempted murder that was identical to the one given in *Santana.* The *Worley* court held these instructions "clearly apprised [the jury] of the element of specific intent. Read as a whole, the instructions ... adequately advised the jury of all of the elements of the crime of attempted murder." *Id.* at 408. Similarly, in *King v. State,* 517 N.E.2d 383 (Ind.1988), our supreme court approved of an attempted murder instruction that defined murder, related the language of the general attempt statute, and provided that the State had to prove the defendant "knowingly ... engages in condut [sic] that constituted a substantial step to accomplish ... the crime of murder." The court stated, "It would have been preferable for the trial court to give explicit instructions on specific intent to murder, but implicit within the instruction is the element that King intended to kill [the victim]." *Id.* at 384–85.

We should frankly acknowledge, given the supreme court's ruling in *Spradlin* just forty days after Concepcion's case was handed down, that if Concepcion's appel-

late counsel had argued the instructional error argument differently or more thoroughly, we might today be referring to the "*Concepcion* rule" rather than the "*Spradlin* rule" regarding attempted murder instructions.[1] Nonetheless, the failure to anticipate or effectuate a change in existing law cannot support an ineffective assistance of appellate counsel claim. *Trueblood*, 715 N.E.2d at 1258. Given the state of the law when Concepcion's appellate counsel prepared his brief and when the case was decided and the opinion certified, it was a reasonable strategic decision to not argue the issue more thoroughly in light of *Santana*, *Worley*, and *King*. We are of the opinion that those cases clearly supported the validity of the attempted murder instructions given in Concepcion's case.

The *Santana* court could not have been more explicit in its belief that including the word "knowingly" in an attempted murder instruction is not erroneous. Additionally, the attempted murder instructions given in Concepcion's case almost directly parallel those given in *Worley* and *King*, in that they related the language of the general intent statute, gave the definitions of murder, "knowingly," and "intentionally," and specified that the conduct engaged in toward the commission of murder had to have been done in a "knowing[ ] and intentional[ ] attempt[ ] to kill" the victim. A

reasonable appellate attorney at the time Concepcion's appeal was pending would have been entirely justified in reading these cases as effectively precluding any claim that the attempted murder instructions here were erroneous. The decision not to argue the issue more thoroughly in Concepcion's case is rendered even more reasonable by the fact that he was appealing a total of twelve convictions, one being a Class B felony and the rest being either Class A felonies or murder, and a total sentence of 230 years. Certainly, in such a case an appellate attorney has to pick and choose the best arguments carefully and is constrained by time and space issues; Concepcion's appellate brief was forty-eight pages long. We give appellate counsel wide discretion on which arguments to make and how to present those issues. Given the pre-*Spradlin* state of the law, we cannot say Concepcion's appellate counsel's conduct fell below professional norms for failing to argue the attempted murder instructions issue more thoroughly or directly.[2] Therefore, the post-conviction court's conclusion that Concepcion received effective assistance of appellate counsel was not contrary to law.

**Conclusion**

We are precluded in this post-conviction proceeding from considering whether Concepcion's claimed instructional error was

---

1. Justice Givan authored the opinion in Concepcion's case. He dissented in *Spradlin* and continued to dissent in cases following and applying *Spradlin*, believing it was incorrectly decided.

2. Even *Spradlin* itself did not expressly overrule or disagree with *Santana*, *Worley*, or *King*. That did not occur until 1993, when our supreme court first expressly stated that *Spradlin* overruled those cases. *See Taylor v. State*, 616 N.E.2d 748, 749 (Ind.1993). A year later, our supreme court stated that, in fact, *Spradlin* merely reiterated and clarified the *Smith* rule and, therefore, *Santana*, *Worley*, and *King* were not actually overruled by *Spradlin*, but that they were indistinguishable from *Smith* and incorrect when they were decided. *Simmons v. State*, 642 N.E.2d 511, 513 (Ind.1994). It becomes difficult to tell whether one case overrules another; if in fact *Santana* et al. were indistinguishable from *Smith*, it would seem they overruled *Smith*, only to be later overruled themselves by *Spradlin*. At any rate, an appellate attorney working at the time of Concepcion's direct appeal would have been justified in not foreseeing that *Santana*, *Worley*, and *King* would be labeled "wrongly decided" in 1994.

fundamental. As for Concepcion's ineffective assistance claim, we cannot say his appellate attorney's performance was defective given the pre-*Spradlin* state of the law. We affirm the denial of Concepcion's post-conviction relief petition.

Affirmed.

DARDEN, J., and MAY, J., concur.