Che B. CARTER, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 49A04–0807–PC–444.

Court of Appeals of Indiana.

Dec. 11, 2008.

Transfer Granted March 5, 2009.

Susan K. Carpenter, Public Defender of Indiana, James T. Acklin, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-petitioner Che B. Carter appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erroneously concluded that he did not receive the ineffective assistance of appellate counsel. Specifically, Carter argues that his appellate attorney was ineffective for failing to raise an argument on appeal that the jury was erroneously instructed on the elements of attempted murder. Finding that appellate counsel was deficient for failing to raise that argument and that Carter was prejudiced as a result, we reverse and remand with instructions to vacate Carter's attempted murder conviction and for further proceedings.

### FACTS

The underlying facts, as described in one of Carter's three direct appeals, are as follows:

> [On June 20, 1990,] Carter approached his victim, a woman who had filed a small claims action against his mother, under the pretense that he wanted to discuss the action with her. After speaking with her on her front porch, Carter forced his way into her home and called to an accomplice who was in a car parked near the woman's home. He then began strangling the woman, and he held her by the throat and hit her with a tire iron while his accomplice removed her pants and raped her. As the woman drifted in and out of consciousness, the two men then robbed her of numerous items in her home, including all of her telephones so that she could not call for help in the event that she regained consciousness. As the men were finishing, the woman recalls Carter telling his accomplice to be certain the woman was dead so that she would not be able to identify them later. Upon leaving, the men dead-bolted the doors and placed obstacles in front of them to impede her escape should she survive the attack and seek help.

*Carter v. State,* No. 49A02–0508–PC–774, slip op. p. 7, 852 N.E.2d 1051 (Ind.Ct.App. July 24, 2006) (*Carter III*). The victim was taken to a hospital with numerous lacerations and contusions; plastic surgery was required to repair some of her injuries. *Carter v. State,* No. 49A02–9108–CR–361, slip op. p. 3, 597 N.E.2d 391 (Ind.Ct.App. July 16, 1992) (*Carter I*). On March 19, 1991, a jury found Carter guilty of class A felony burglary, class A felony

robbery, class B felony rape, and class A felony attempted murder. On May 6, 1991, the trial court sentenced Carter to twenty years for burglary, thirty years for robbery, ten years for rape, and thirty years for attempted murder, to be served consecutively, for an aggregate executed sentence of ninety years.

Carter appealed, raising four arguments: (1) the evidence was insufficient to sustain the rape and attempted murder convictions; (2) the trial court erred by denying Carter's motion for a continuance; (3) the trial court erred by admitting certain items into evidence; and (4) Carter's sentence constituted cruel and unusual punishment. This court affirmed Carter's convictions but remanded for resentencing, having found sua sponte that the same facts were used to elevate the robbery and burglary convictions to a higher level of felony and to support the attempted murder conviction, violating double jeopardy. *Carter I*, slip op. p. 6. On January 22, 1993, the trial court modified Carter's robbery and burglary convictions to class B felonies and revised Carter's robbery conviction to twenty years, resulting in a revised aggregate sentence of eighty years imprisonment.

On July 12, 2004, Carter was given permission to file a belated appeal of *Carter I*. This court reversed and remanded for resentencing, finding that the aggravators relied upon by the trial court in *Carter I* violated the rules announced in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Carter v. State*, No. 49A05–0408–CR–436, 827 N.E.2d 661 (Ind.Ct.App. Apr. 27, 2005) (*Carter II*). On July 21, 2005, the trial court revised Carters sentences for class B felony burglary and robbery to ten years apiece,

leaving the ten-year rape and thirty-year attempted murder sentences unchanged, for an aggregate executed sentence of sixty years. Carter appealed the resentencing decision, arguing that the trial court subjected him to vindictiveness and that the sentence was inappropriate. This court affirmed. *Carter III,* slip op. p. 7–8.

On November 13, 2006, Carter filed an amended petition for post-conviction relief, arguing that his appellate counsel in *Carter I* was ineffective for failing to argue that the jury had been improperly instructed about the specific intent required to convict him of attempted murder.[1] Following a hearing that took place on November 14, 2007, and February 6, 2008, the post-conviction court denied the petition on June 13, 2008. In relevant part, the court found as follows:

> From the examination of the appellate opinion and the thorough brief of appellate counsel which raised four valid issues, it appears that [appellate counsel's] work on [Carter's] case was well within an objective standard of reasonableness based on "prevailing professional norms."
>
> [Carter] specifically alleges deficiency in counsel's failure to raise the issue on direct appeal that trial counsels failure to instruct the jury regarding specific intent to commit attempted murder constituted fundamental error. [Carter] cites *Spradlin v. State,* 569 N.E.2d 948 (Ind.1991) in support of his argument that the jury instructions and charging information failed to inform the jury that specific intent was a required element of attempted murder.... The *Spradlin* Court held that the given instruction did not sufficiently inform the jury that one must intend to commit

---

1. The State does not raise a laches argument in support of its position that the post-conviction court should be affirmed.

that crime while taking a substantial step toward the commission of the crime, and therefore reversed the conviction. *Id.* at 951. At the time [Carter's appellate counsel] prepared and filed [Carter's] appeal, however, there was a split in the law as to this issue and *Spradlin* was not controlling. *See Concepcion v. State*, 796 N.E.2d 1256, 1263 n. 2 (Ind.Ct.App.2003), *trans. denied* ( [c]larifying that "[e]ven *Spradlin* itself did not expressly overrule or disagree with *Santana, Worley,* or *King.* That did not occur until 1993, when our supreme court first expressly stated that Spradlin overruled those cases. *See Taylor v. State*, 616 N.E.2d 748, 749 (Ind.1993).") The filing of [Carter's] appellate brief and the issuance of the resulting appellate court opinion occurred in 1992. The law in effect in 1992—*Santana, Worley*, and *King*—supports [appellate counsel's] decision not to include the at-tempt[ed] murder instruction as an issue on appeal.

\* \* \*

... [T]he law applied in *Worley, Santana,* and *King* ... was in flux but still in effect both when [Carter] was convicted and when his appellate brief was filed....

[T]he failure to anticipate or effectu-ate a change in existing law cannot sup-port an ineffective assistance of appel-late counsel claim. Given the status of the law concerning attempted murder jury instructions at the time [Carter's] appellate brief was filed—including a significant line of cases that were good law until the year after [Carter's] appeal was decided and that supported the va-lidity of the attempt[ed] murder jury instruction given in his trial—the choice made by [appellate counsel] not to raise the issue was reasonable when that choice was made....

Appellant's App. p. 161–66 (some internal citations omitted). Carter now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ The petitioner in a post-convic-tion proceeding bears the burden of es-tablishing grounds for relief by a pre-ponderance of the evidence. Ind. Post–Conviction Rule 1(5); *McCarty v. State*, 802 N.E.2d 959, 962 (Ind.Ct.App.2004), *trans. denied.* When appealing from the denial of post-conviction relief, the peti-tioner stands in the position of one ap-pealing from a negative judgment. *Id.* On review, we will not reverse the judg-ment unless the evidence as a whole un-erringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Post-conviction procedures do not afford petitioners with a "super appeal." *Richardson v. State*, 800 N.E.2d 639, 643 (Ind.Ct.App.2003). Rather, they create a narrow remedy for subsequent collateral challenges to con-victions that must be based upon grounds enumerated in the post-convic-tion rules. *Id.; see also* P–C.R. 1(1).

When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Pinkins v. State*, 799 N.E.2d 1079, 1093 (Ind.Ct.App.2003). First, the defendant must show that coun-sel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. This requires a showing that counsel's repre-sentation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *Id.* at 687–88, 104 S.Ct. 2052. Second, the defendant must show

that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Claims of ineffective assistance of appellate counsel are reviewed using the same standard applicable to claims of trial counsel ineffectiveness. *Bieghler v. State,* 690 N.E.2d 188, 193 (Ind.1997). These claims generally fall into three categories: (1) denying access to the appeal, (2) waiver of issues, and (3) failure to present issues well. *Id.* at 193–95. The decision of what issue or issues to raise on appeal is one of the most important strategic decisions made by appellate counsel. *Id.* at 193. Thus, ineffectiveness is rarely found when the issue is the failure to raise a claim on direct appeal. *Id.*

 To show that counsel was deficient for failing to raise an issue on direct appeal, i.e., waiving the issue, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Ben–Yisrayl v. State,* 738 N.E.2d 253, 261 (Ind. 2000), *cert. denied,* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002). In evaluating appellate counsel's performance, we consider whether the unraised issues are significant and obvious from the record and whether the unraised issues are "clearly stronger" than the issues that were presented. *Bieghler,* 690 N.E.2d at 194. If that analysis demonstrates deficient performance by counsel, the court then examines whether "the issues which ... appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." *Id.*

## II. Assistance of Appellate Counsel

### A. Performance

Carter's sole argument in his petition for post-conviction relief and on appeal is that his appellate counsel was ineffective for failing to raise the issue of the attempted murder jury instruction in *Carter I*. Pursuant to the above authority, therefore, we must first consider whether appellate counsel's performance was deficient.

### 1. Precedent

In 1984, our Supreme Court held that the failure to include language about the State's burden to prove that the defendant acted with specific intent to kill the victim in an attempted murder jury instruction is fundamental error, reversing the defendant's conviction as a result. *Smith v. State,* 459 N.E.2d 355, 358–59 (Ind.1984). In *Smith,* the jury instruction read as follows:

A person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense. Culpability.

(a) A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so.

(c) A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

(d) Unless the statute defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with re-

spect to every material element of the prohibited conduct."

*Id.* at 358. The court explained its reversal as follows:

[W]e are left with instructions which would lead the jury to believe that the Defendant could be convicted of attempted murder if he knowingly engaged in conduct which constituted a substantial step toward the commission of murder. Although one may be guilty of murder, under our statute, without entertaining a specific intent to kill the victim, he cannot be guilty of attempted murder without entertaining such intent. The attempt must be to effect the proscribed result and not merely to engage in proscribed conduct. *An instruction which correctly sets forth the elements of attempted murder requires an explanation that the act must have been done with the specific intent to kill.* Here, the instruction does not, and the jury might infer from the instructions given that they could find the Defendant guilty of attempted murder even if there was no intent to kill the victim at the time he acted.

In *Clemons v. State*, (1981) Ind., 424 N.E.2d 113, the appellant contended that an instruction on the elements of the crime of attempted murder was incomplete because it did not set forth the element of specific intent to kill. This Court found his argument to be without merit inasmuch as the court also instructed the jury on the definition of murder, and the necessary element of specific intent was correctly set out therein. The case at bar, however, contains no instruction on specific intent; therefore, we are compelled to reverse the judgment of the trial court and remand this cause for a new trial.

*Id.* (emphasis added).

After *Smith,* however, our Supreme Court affirmed attempted murder convictions where the jury was instructed as follows:

To convict the defendant of the crime of attempted murder, the State must have proved the following elements:

1. the defendant knowingly or intentionally

2. took a substantial step to accomplish

3. a knowing or intentional killing of another human being.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty of attempted murder.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of attempted murder, a Class A felony.

*Santana v. State,* 486 N.E.2d 1010, 1011 (Ind.1986), *overruled by Spradlin v. State,* 569 N.E.2d 948 (Ind.1991); *see also King v. State,* 517 N.E.2d 383, 384 (Ind.1988), overruled by Spradlin (affirming a conviction based on a substantially similar attempted murder jury instruction); *Worley v. State,* 501 N.E.2d 406, 408 (Ind.1986), *overruled by Spradlin* (same). The *Worley* court reasoned that, as compared to Smith, "[h]ere, the jury was much more clearly apprised of the element of specific intent. Read as a whole, the instructions in the present case adequately advised the jury of all of the elements of the crime of attempted murder." 501 N.E.2d at 408.

On April 15, 1991—approximately one month after Carter was convicted—our Supreme Court handed down *Spradlin.* In *Spradlin,* the defendant had been convicted of battery and attempted murder and argued, among other things, that the jury instruction on attempted murder had been erroneous. Our Supreme Court analyzed the caselaw up to that point in time and concluded that language about the de-

fendants intent to kill must be included in a jury instruction on attempted murder:

Henceforth, we hold that an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder *must* inform the jury that the State must prove beyond a reasonable doubt that the defendant, *with intent to kill the victim,* engaged in conduct which was a substantial step toward such killing.

569 N.E.2d at 950 (emphases added). Because the jury instruction at issue in Spradlin did not instruct the jury that the State was required to prove that the defendant intended to kill the victim, our Supreme Court reversed the attempted murder conviction. *Id.*

After *Spradlin* was decided, our Supreme Court handed down a pair of decisions that addressed a similar issue but arrived at a different result. As explained by a panel of this court,

In two recent decisions with almost identical factual and legal issues, the Supreme Court modified the fundamental error rule enunciated in *Spradlin, Abdul–Wadood*[ *v. State* (1988), Ind., 521 N.E.2d 1299], and *Smith.* In *Jackson v. State* (1991), Ind., 575 N.E.2d 617, and *Allen v. State* (1991), Ind., 575 N.E.2d 615, the Supreme Court concluded that the failure to properly instruct the jury as to the specific "intent to kill" element of attempted murder is not *necessarily* fundamental reversible error.

In both *Jackson* and *Allen,* the Supreme Court focused on two factors. First, in each case, the instructions to the jury included, as an element that the State must prove, that the defendant "attempt[ed] to commit the crime of murder *by attempting to kill* " the victim. *Jackson,* supra at 620; *Allen,* supra at 616 (emphasis supplied). The Supreme Court determined that, while the element of "intent to kill" was lacking in the instruction, the instruction was sufficient to convey the State's burden to prove intent to kill such that giving the instruction was not fundamental error.

The other factor on which the Supreme Court focused is that in each case the defendants intent was not an issue, but rather the issue at the center of each trial was the identity of the perpetrator of the crimes. The Supreme Court's holding that the instructions did not constitute fundamental error was grounded solely on those two factors. *Pierce v. State,* 579 N.E.2d 1317, 1318–19 (Ind.Ct.App.1991) (emphases in original). The *Pierce* court considered the language in the attempted murder instruction given in Pierce's trial, concluding that

the instructions given to Pierce's jury did not contain the additional 'by attempting to kill' language found in both *Jackson* and *Allen.* Rather, the trial court merely instructed the jury as to the elements of attempt and the elements of murder. Further, Pierce's intent was the primary issue at his trial. Pierce argued that he was too intoxicated to form the requisite intent. Therefore, because none of the factors relied upon by the Supreme Court in *Jackson* and *Allen* are present here, our original decision is still mandated by *Spradlin, Abdul–Wadood* and *Smith.*

Despite the State's argument to the contrary, we do not read the Supreme Courts decisions in *Jackson* and *Allen* as overruling *Spradlin, Abdul–Wadood,* and *Smith.* It would appear the Supreme Court was only modifying its previous rule concerning fundamental error in attempted murder instructions in *Jackson* and *Allen.*

*Id.* at 1319.

In *Taylor v. State,* our Supreme Court sought to clarify the rules surrounding

jury instructions on attempted murder. 616 N.E.2d 748 (Ind.1993). The court explicitly stated, for the first time, that *Spradlin* "effectively overruled" *King, Worley, Santana,* and "other prior cases contrary to *Spradlin.*" *Id.* at 749. The *Taylor* court found the instruction at issue therein to be insufficient pursuant to *Spradlin,* which "enunciated the standard now to be applied," and reversed the defendants conviction. *Id.* Subsequently, our Supreme Court acknowledged that before *Taylor* was decided—in other words, during the period of time when our Supreme Court "had decided *Spradlin* but had not expressly overruled *Worley* and *Santana*"—"some *confusion remained* on the standard for attempted murder jury instructions." *Arthur v. State,* 663 N.E.2d 529, 531 (Ind.1996) (emphasis added).

In *Simmons v. State,* our Supreme Court further clarified the Spradlin rule, explaining as follows:

> The State ... places great weight on our use of 'Henceforth,' arguing that it shows we intended that *Spradlin* not apply retroactively and therefore not to this case. We were, however, simply attempting to eliminate any *future confusion* about what the law already was at the time we decided *Spradlin.*

*Simmons v. State,* 642 N.E.2d 511, 513 (Ind.1994) (emphasis in original). The *Simmons* court also clarified *Taylor,* ultimately granting the defendant's petition for post-conviction relief based upon the erroneous instruction:

> [W]e might have been more explicit in *Taylor* when we said that *Spradlin* effectively overruled *King, Worley, Santana,* and other prior cases contrary to *Spradlin. Taylor,* 616 N.E.2d at 748. Because none of those cases contrary to *Spradlin* overruled *Smith,* but merely found grounds to distinguish their facts from those in *Smith,* to say that *Sprad-*

*lin* overruled those cases is to say that they were indistinguishable from *Smith.* Because they were, in fact, indistinguishable from *Smith,* we now explicitly recognize that *King, Worley,* and *Santana* were wrongly decided, and that the rule of *Smith,* reiterated in *Spradlin,* should have controlled the decisions in those cases.

> Similarly, the rule of *Smith* controls in this case. The instruction challenged by Simmons did to inform the jury that "the act must have been done with the specific intent to kill." *Smith,* 459 N.E.2d at 358. The State points to no other instruction which informed the jury of the required element of specific intent to kill, and we find none. *See Smith,* 459 N.E.2d at 357–358. We conclude that Simmons's conviction was in violation of the applicable law of this state, Ind. Post–Conviction Rule 1, § 1(a)(1), and that his petition for post-conviction relief should be granted.

*Id.* For several years, therefore—including the period of time during which Carter's appellate brief was filed—the state of the law on the issue of attempted murder jury instructions was marked by confusion and uncertainty.

### 2. *Jury Instruction in this Case*

▮ In this case, the jury was given the following instruction on attempted murder:

> The crime of attempt is defined by statute as follows:

> > A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward the commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a class A felony.

The crime of murder is defined by statute as the knowing or intentional killing of another human being.

To convict the defendant the State must have proved each of the following elements:

The defendant[ ] . . .

1. Knowingly

2. Engaged in conduct by striking [the victim] on or about her head by means of a deadly weapon, that is a tire tool and strangling her neck rendering her unconscious.

3. That the conduct was a substantial step toward the commission of the crime of murder: that is the knowing and intentional killing of another human being.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of a crime of attempted murder, a class A felony.

Ex. E. This instruction did not inform the jury that the State was required to prove beyond a reasonable doubt that Carter acted "with the intent to kill the victim." Further, it stated that the State was required to prove that Carter acted "with the culpability required for commission of the crime" and then instructed the jurors that murder is "the knowing *or* intentional killing of another human being." *Id.* (emphasis added). Although those statements are technically accurate, the disjunctive "or" between "knowing" and "intentional" is misleading in the context of an instruction on attempted murder. In other words, as in *Spradlin,* the instruction failed to inform the jurors that the State was required to prove that the defendant intended to kill the victim.

At the time Carter's appellate counsel filed his direct appeal, it had been eleven months since *Spradlin* was decided. In those eleven months, our Supreme Court also decided *Jackson* and *Allen,* and this court decided *Pierce.* In the ensuing two years, our Supreme Court decided three more cases—*Taylor, Arthur,* and *Simmons*—in an endeavor to clear up the "confusion" caused by Spradlin and its progeny. *Arthur,* 663 N.E.2d at 531.

The post-conviction court considered this precedent and denied Carter's petition because, at the time appellate counsel filed the brief, the state of the law regarding attempted murder jury instructions "was in flux[.]" Appellants App. p. 165. Our Supreme Court, however, has considered the duties of appellate counsel during a time in which the relevant area of law is in flux and concluded that, under such circumstances, counsel is obligated to make the argument:

[P]recisely because the law in this area was unsettled and *in a state of flux* at the time of Fisher's trial and appeal, the issue of whether the trial court erred in refusing to give a lesser-included instruction on reckless homicide was both significant and obvious as well as clearly stronger than the issues raised. *See Pelmer v. White,* 877 F.2d 1518, 1523 (11th Cir.1989) ("That the law is unsettled on a point does not mean the legal basis for arguing the point is unavailable").

*Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004) (emphasis added). Thus, our Supreme Court concluded that Fisher's appellate counsel had been ineffective based on the failure to raise the issue in his direct appeal. *Cf. Concepcion v. State,* 796 N.E.2d 1256, 1263 (Ind.Ct.App.2003) (finding that it was not fundamental error when appellate counsel failed to challenge an attempted murder instruction when the

appellate brief was filed before *Spradlin* was decided).

Here, the State attempts to distinguish *Fisher* from the circumstances we confront herein by arguing that here, unlike in *Fisher*,

> there were not two distinct lines of cases, but rather several different cases that all acknowledged the same baseline principal (one must have the specific intent to kill to be guilty of attempted murder) but that reached different results when deciding whether that accepted principal was expressed in the language of the instruction at issue in that case.

Appellee's Br. p. 11. We find this to be a distinction without a difference. At the time of Carter's appeal, the law concerning attempted murder instructions was unsettled. Indeed, the State concedes that "after *Spradlin* was decided but before the *Santana, Worley* and *King* cases had been overruled—there was 'confusion' in the law as to what, exactly, constituted an impermissible attempted murder instruction." *Id.* at 10 (quoting *Arthur,* 663 N.E.2d at 531). Furthermore, although the State now quibbles with the "in flux" label, we note that its proposed findings of fact and conclusions of law that were tendered to the post-conviction court reached that precise conclusion. *Id.* at 155. Under these circumstances, we find that the *Fisher* rationale applies. Thus, the fact that the law regarding attempted murder jury instructions was in flux at the time of Carter's appeal means that the issue was both significant and obvious.

Turning to whether the issue was clearly stronger than those actually raised, we note that appellate counsel raised four issues in Carter's direct appeal: (1) whether there was sufficient evidence supporting the rape and attempted murder convictions; (2) whether the trial court erroneously denied Carter's motion for a continuance; (3) whether the trial court erroneously admitted a videotape and several photographs into evidence; and (4) whether Carter's sentence constituted cruel and unusual punishment. Ex. C.

As to the sufficiency of the evidence, the argument on appeal amounted to a request to reweigh the evidence, which was quickly rejected by this court. *Carter I,* slip op. at 4. This result is not surprising considering that "[c]ourts on appeal rarely reverse a jury's guilty verdict on sufficiency of evidence grounds." *Fisher,* 810 N.E.2d at 677.

As to the second issue, counsel contended that the trial court should have granted a continuance because Carter's mother had his attorney's case file at that time. This court, however, rejected the argument because the file had been returned to the attorney and Carter had not demonstrated any prejudice stemming from the file's absence. *Id.* at 4–5. Inasmuch as the decision to grant or deny a motion for continuance rests within the trial courts discretion, *Trinity Baptist Church v. Howard,* 869 N.E.2d 1225, 1230 (Ind.Ct.App. 2007), *trans. denied,* and given that the file had been returned to trial counsel, it is evident that this argument was not likely to succeed on appeal.

As to the admission of evidence, appellate counsel argued that the trial court erroneously permitted the jurors to view a videotape of Carter wearing handcuffs and photographs of the victim following the attack. This court rejected the argument as to the picture of Carter in handcuffs because it was relevant to his co-defendant's identity and because any possible prejudice was mitigated by testimony that handcuffing was standard operating procedure in arresting a suspect. This court also rejected the argument regarding the

photographs of the victim, finding that they were not so gruesome that the prejudicial impact outweighed the probative value. Given that our Supreme Court has cautioned that the trial court is given wide latitude in determining the relevancy of evidence and weighing its probative value against its possible prejudicial impact, *Hunter v. State,* 578 N.E.2d 353, 357 (Ind. 1991), it is not at all surprising that Carter's appellate counsel was unsuccessful in raising this argument.

The court did not address Carter's final issue—that his sentence constituted cruel and unusual punishment—because it sua sponte ordered resentencing based upon double jeopardy considerations not raised by counsel. Had the issue been considered substantively, we note that appellate counsel cited no authority save for two easily distinguishable cases. Furthermore, we note that the trial court found two aggravators that counsel did not, and could not, challenge on appeal—Carter's substantial juvenile and adult criminal history and the nature and circumstances of the crime. Thus, even if the court had considered this argument, it would almost certainly not have ordered resentencing on this basis.

Given the respective standards of review applied to these four arguments, it is evident that none of them were likely to succeed. As we explored above, however, an argument that the jury instruction on attempted murder erroneously omitted a statement that the State was required to prove that Carter acted with the intent to kill the victim would have had a substantial likelihood of success based on *Spradlin.*

In sum, we find that this issue was significant, obvious, and clearly stronger than the issues that were actually raised, meaning that appellate counsel's performance was deficient. Next, therefore, we must consider whether Carter was preju-diced as a result of counsel's failure to raise the issue.

### B. Prejudice

■ The State argues that, even if appellate counsel should have argued that the attempted murder jury instruction was problematic, Carter was not prejudiced as a result of the error. In considering whether Carter was prejudiced by appellate counsel's deficient performance, we examine whether "the issues which ... appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." *Bieghler,* 690 N.E.2d at 194.

The State first contends that, "although the instruction at issue was not perfect because it did contain the 'knowingly' language, the instruction nevertheless required the jury to find that [Carter] intended to kill." Appellee's Br. p. 12. As set forth above, the jury instruction first informed the jury that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward the commission of the crime." Ex. E. The instruction then states that murder is "the knowing *or* intentional killing of another human being," *id.* (emphasis added), without telling the jurors that they must find that Carter acted with the specific intent to kill the victim. Pursuant to *Spradlin* and its progeny, that portion of the instruction is incorrect—it is fundamentally erroneous. The State argues, however, that because the instruction later states that the State was required to prove "[t]hat the conduct was a substantial step toward the commission of the crime of murder: that is the knowing *and* intentional killing of another human being," *id.* (emphasis added), the earlier error was cured and Carter was not prejudiced as a result. It is well established, however,

that a correct jury instruction does not cure an erroneous one:

> "[T]his court has repeatedly enunciated the rule that the error of a bad instruction is not cured by the giving of correct instructions on the same subject. Such instructions are not viewed as a whole, with this court on appeal left to determine which of the contradictory instructions the jury should reasonably have believed."

*FMC Corp. v. Brown,* 526 N.E.2d 719, 730 (Ind.Ct.App.1988) (quoting *Deckard v. Adams,* 246 Ind. 123, 127, 203 N.E.2d 303, 306 (1965)). Therefore, the fact that the instruction at issue herein contained an accurate statement of the law as well as an inaccurate one does not mean that Carter was not prejudiced as a result of the inaccuracy.

■ Next, the State argues that because both parties argued to the jury in their closing arguments that the State was required to prove an intent to kill to convict Carter of attempted murder, Carter was not prejudiced as a result of the erroneous jury instruction. We cannot agree. Jurors are presumed to follow jury instructions but are *not* presumed to follow the law as recited by counsel during closing argument. *See Chandler v. State,* 581 N.E.2d 1233, 1237 (Ind.1991) (holding that it is presumed that the jury obeyed the trial court's instructions); *Hudgins v. State,* 451 N.E.2d 1087, 1091 (Ind.1983) (holding that "[a]ny misstatements of law during closing argument are presumed cured by final instruction"); *Barnes v. State,* 435 N.E.2d 235, 242 (Ind.1982) (same); *see also Gray v. Lynn,* 6 F.3d 265, 271 (5th Cir.1993) (rejecting an argument that a *Spradlin*-like instructional error was harmless because both parties argued during closing that the State was required to prove intent to kill, reasoning that "we cannot conclude that the jurors ignored

the court's erroneous instructions and chose, instead, to apply the law as stated correctly by counsel"). Consequently, this argument must fail.

Finally, the State argues that, notwithstanding the fact that Carter's intent was concededly at issue because he raised a voluntary intoxication defense, there was sufficient evidence of his intent to kill the victim that no prejudice stemmed from the erroneous jury instruction. More specifically, the State notes that its evidence

> showed that [Carter] hit the victim in the head with a tire iron and choked her around the neck with both hands, resulting in serious injuries to her. The State also presented evidence that either [Carter] or his co-defendant said that they had to make sure she was dead. It cannot seriously be disputed that this evidence, if credited, demonstrates an intent to kill, and [Carter] did not really attempt to do so. Instead, he made a circular argument that, because the victim did not die, he must not have intended to kill her, and he disputed that anyone ever said to make sure the victim was dead. Thus, the real issue here was whether the jury believed that this conduct/statement occurred, not whether the jury believed that this conduct-statement demonstrated an intent to kill or only an intent to injure.

Appellee's Br. p. 14 (internal citations omitted). As Carter points out, this same "circular" argument was accepted by a unanimous panel in *Gray* and could also have been embraced by at least one of Carter's twelve jurors:

> Considering the circumstances, including the fact that [the defendant] did not take advantage of several golden opportunities to kill [the victim] if he had intended to do so, we think there is at least a reasonable probability that the jury could have had a reasonable doubt

about [the defendant's] intent to kill, and that it convicted him instead on the basis of the erroneous instruction.

*Gray,* 6 F.3d at 270. We agree with this analysis.

Indeed, even the State concedes that this argument is not wholly sound, stating that the erroneous jury instruction "is *less prejudicial* under [these] circumstances than it would be in a case where the conduct at issue would give rise to legitimate ambiguity as to the intended or desired outcome." Appellee's Br. p. 14 (emphasis added). If Carter experienced *any* prejudice as a result of his counsel's failure to raise the issue, however, then we are compelled to find that he received the ineffective assistance of counsel. That the amount of the prejudice was "less" than it may have been under other circumstances is irrelevant.

Having examined all of the possible ways in which it can be argued that Carter was not prejudiced as a result of his attorney's error, we simply cannot reach that conclusion. Indeed, the State admits that "any one of these factors standing alone might not be sufficient to render the instruction error harmless[.]" *Id.* The attempted murder jury instruction was fundamentally erroneous, and at the time Carter's appellate brief was filed, the state of the law was in flux. Carter's appellate counsel failed to raise the issue, raising four other long-shot arguments instead. The decision to omit that argument resulted in deficient performance, and we can only conclude that Carter was prejudiced as a result of his attorney's error. Consequently, we are compelled to reverse.

The judgment of the post-conviction court is reversed and remanded with instructions to vacate Carter's attempted murder conviction and for further proceedings.

MATHIAS, J., concurs.

BROWN, J., dissents with opinion.

BROWN, Judge, dissenting.

I respectfully dissent from the majority's reversal of Carter's attempted murder conviction. While I agree that the instruction at issue here was erroneous and that Carter's appellate counsel was deficient for failing to raise the issue on direct appeal, I conclude that Carter has failed to demonstrate prejudice. As a result, I would affirm the post-conviction courts denial of Carter's petition for post-conviction relief.

If deficient performance by appellate counsel is found, we turn to the prejudice prong to determine whether the issues appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial. *Ritchie v. State,* 875 N.E.2d 706, 724 (Ind.2007), *reh'g denied; Overstreet v. State,* 877 N.E.2d 144, 165 (Ind.2007) (holding that, to show prejudice in a claim of ineffective assistance of appellate counsel, the petitioner must show a reasonable probability that, but for counsels errors, the result of the proceeding would have been different), *reh'g denied, cert. denied,* —— U.S. ——, 129 S.Ct. 458, 172 L.Ed.2d 331 (2008). Because Carter's trial counsel did not object to the instruction at trial, his appellate counsel would have been required to raise the issue on direct appeal as fundamental error.

The Indiana Supreme Court has held that when we consider a claim of fundamental error, "we look to the jury instructions as a whole to determine if they were adequate." *Ringham v. State,* 768 N.E.2d 893, 898 (Ind.2002), *reh'g denied.* Even in cases of "clear *Spradlin* error," the Indiana Supreme Court has refused to vacate an attempted murder conviction if "the instructions as a whole sufficiently

suggested the requirement of intent to kill." *Williams v. State,* 737 N.E.2d 734, 737 (Ind.2000) (citing *Ramsey v. State,* 723 N.E.2d 869, 873 (Ind.2000)) (holding that "the jury instructions, taken as a whole, sufficiently informed the jury of the State's burden of proving that the Defendant specifically intended to kill the victim").

Here, the instruction first provided that "[t]he crime of murder is defined by statute as the *knowing or intentional killing* of another human being." Petitioner's Exhibit E (emphasis added). The instruction also stated that the State was required to prove that Carter and his co-defendant "*knowingly* ... engaged in conduct by striking Donna M. Stegemiller on or about her head by means of a deadly weapon, that is a tire tool and strangling her neck rendering her unconscious." *Id.* (emphasis added). However, the instruction then provided that the State was also required to prove that "the conduct was a substantial step toward the commission of the crime of murder: that is the *knowing and intentional* killing of another human being." *Id.* (emphasis added).

While portions of the instruction were erroneous, I conclude that the instruction as a whole sufficiently informed the jury that the State was required to prove an intent to kill. As a result, I conclude that the instruction did not result in fundamental error, and Carter was not prejudiced by his appellate counsel's failure to raise the issue on direct appeal. I would affirm the post-conviction courts denial of Carter's petition for post-conviction relief.