ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

James T. Acklin
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana



FILED
Jul 01 2010, 2:23 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S04–0903–PC–102

CHE B. CARTER,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

Appeal from the Marion Superior Court, No. 49G04–9006–PC–76589
The Honorable Patricia J. Gifford, Judge

The Honorable Steven J. Rubick, Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 49A04–0807–PC–444

**July 1, 2010**

**Shepard, Chief Justice.**

Che B. Carter has sought post-conviction relief, contending that appellate counsel was deficient for failing to challenge a jury instruction on attempted murder. The post-conviction

court was likely wrong in concluding that Carter's lawyer performed within the range of reasonableness when she omitted this issue, on which there was considerable flux at the time. Nevertheless, it seems apparent that Carter did not suffer sufficient prejudice to warrant setting aside the verdict.

## Facts and Procedural History

This is the twentieth year since Carter committed his crimes, and this is his fourth appeal. On June 20, 1990, Carter went to the home of the victim, who had filed a small claims case against his mother. Carter remained on the victim's porch while they discussed the case, then he broke open the storm door and began strangling the victim with his hands. He also held her down and struck her with a tire iron. Carter pulled the victim to the front door and shouted for his associate Mitchell to come into the house. Carter held the victim down and choked her while Mitchell began to rape her. Carter removed several rings from the victim's fingers while Mitchell was raping her. Before losing consciousness, the victim saw the men taking a stereo speaker and one of the men told the other to make sure she was dead so she could not identify them.[1]

After a joint jury trial with his codefendant, Carter was convicted on counts of burglary, robbery, rape, and attempted murder and sentenced for a total of ninety years.[2] Appellate

---

[1] The victim's testimony was that one of her attackers said to the other, "[M]ake sure she's dead before we leave because she can identify us." (Tr. at 262.) At the time of trial, the victim did not remember the two defendants saying this. (Tr. at 315–16.) She did, however, remember telling this to police officers. (Tr. at 262.) The first person she spoke to after the attack, testified she told him that one of her attackers said, "[M]ake sure the bitch is dead before we leave." (Tr. at 388–90.) The first officer she spoke to testified she told him she heard "[D]on't leave until she is dead." (Tr. at 410–11.)

[2] Carter was also charged with confinement, but the jury found him not guilty. (Ex. A at 91, 154–55.)

counsel Belle Choate filed Carter's Brief of Appellant on March 26, 1992. She raised four issues. The Court of Appeals affirmed the convictions but remanded for re-sentencing after finding, <u>sua sponte</u>, that the enhancements of the robbery and burglary convictions violated double jeopardy. <u>Carter v. State</u>, No. 49A02–9108–CR–361, slip op. at 6 (Ind. Ct. App. July 16, 1992) (<u>Carter I</u>) (also found at Ex. B at 6).

After this and a second successful appeal, Carter's sentence was ultimately reduced to sixty years. <u>Carter v. State</u>, No 49A05–0408–CR–436 (Ind. Ct. App. Apr. 27, 2005) (<u>Carter II</u>) (remanding to comply with <u>Blakely v. Washington</u>, 542 U.S. 296 (2004)); <u>Carter v. State</u>, No. A02–0508–PC–774 (Ind. Ct. App. July 24, 2006) (<u>Carter III</u>) (affirming 60-year sentence); (App. at 26–27, 37–40).

On November 13, 2006, Carter filed an amended petition for post-conviction relief, claiming ineffective assistance of his appellate counsel for failure to argue that the instructions on attempted murder did not sufficiently inform the jury that one must intend to commit murder while taking a substantial step toward committing that crime.

The post-conviction court denied the petition, finding that Carter had not "overcome the strongest presumption of adequate assistance by appellate counsel." (App. at 161–66.) The post-conviction court noted that the law on attempted murder instructions was in flux at the time Choate wrote her brief and that multiple decisions sanctioning instructions like the challenged instruction Number 19 were "still in effect both when [Carter] was convicted and when his appellate brief was filed." (App. at 165.) Finally, the post-conviction court reasoned that "the choice made by Ms. Choate not to raise the issue was reasonable when that choice was made." (App. at 165–66 (citations omitted).)

A divided Court of Appeals reversed the post-conviction court. <u>Carter v. State</u>, 898 N.E.2d 315 (Ind. Ct. App. 2008) (Brown, J., dissenting). We granted transfer. <u>Id.</u> (Transfer Granted March 5, 2009).

## Assistance of Appellate Counsel

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Helton v. State</u>, 907 N.E.2d 1020, 1023 (Ind. 2009). Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. <u>Bieghler v. State</u>, 690 N.E.2d 188, 193–95 (Ind. 1997) (citing Lissa Griffin, <u>The Right to Effective Assistance of Appellate Counsel</u>, 97 W. Va. L.Rev. 1, 21–22 (1994)). Carter's claim fits the second category.

To prevail on a claim about appellate counsel's failure to raise an issue, the first prong of the <u>Strickland</u> test requires Carter to show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. <u>Ben-Yisrayl v. State</u>, 738 N.E.2d 253, 260–61 (Ind. 2000) (citing <u>Strickland</u>, 466 U.S. at 687). We "consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance." <u>Bieghler</u>, 690 N.E.2d at 194.

In <u>Bieghler</u>, this Court approved the two-part test used by the Seventh Circuit to evaluate these claims: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. <u>Id.</u> (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986)). We have also said that "to prevail on a claim of ineffective assistance of appellate counsel, 'a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy.'" <u>Timberlake v. State</u>, 753 N.E.2d 591, 606 (Ind. 2001) (quoting <u>Ben-Yisrayl</u>, 738 N.E.2d at 260–61).

The current proceeding has focused on appellate counsel's failure to challenge instruction Number 19, which told the jury that murder could be "knowing or intentional" and that attempted murder required proof of a knowing step toward a "knowing and intentional killing," as follows:

> The crime of attempt is defined by statute as follows:
>
> A person attempts to commit a crime when, acting with the culpability required for the commission of the crime, he engages in conduct that constitutes a substantial step toward the commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a class A felony.
>
> The crime of murder is defined by statute as the knowing or intentional killing of another human being.
>
> To convict the defendant the State must have proved each of the following elements:
>
> The defendants Che B. Carter and Wayne Mitchell
>
> 1. Knowingly
> 2. Engaged in conduct by striking [the victim] on or about her head by means of a deadly weapon, that is a tire tool and strangling her neck rendering her unconscious.
> 3. That the conduct was a substantial step toward the commission of the crime of murder: that is the knowing and intentional killing of another human being.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty.
>
> If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of attempt murder, a class A felony.

(Ex. A at 112.)

Carter's claim is that his lawyer should have appealed on grounds that this instruction violated Spradlin v. State, 569 N.E.2d 948 (Ind. 1991). In Spradlin we held that attempted murder instructions "must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing." Id. at 950. The attempted murder instruction in Spradlin read:

> To convict the defendants, the State must have proved each of the following elements:
>
> The defendants
>
> 1. knowingly or intentionally
>
> 2. strike, stab and cut the body of Robert Grubbs
>
> 3. that the conduct was a substantial step toward the commission of the crime of murder.

Id. at 950–51. In reversing, we noted, "Nowhere in the instructions is there a requirement that the State prove that the Spradlins, at the time that they struck, stabbed, and cut the victims, intended to kill such victims." Spradlin, 569 N.E.2d at 951. In evaluating the jury instruction, we cited Smith v. State, 459 N.E.2d 355 (Ind. 1984), and Zickefoose v. State, 270 Ind. 618, 388 N.E.2d 507 (1979).

However, the Court observed in Arthur v. State, 663 N.E.2d 529, 531 (Ind. 1996), that "some confusion remained" over the reach of Spradlin until we decided Taylor v. State, 616 N.E.2d 748 (Ind. 1993)—after the Court of Appeals issued its opinion affirming Carter's convictions.

Still, the fact that "the state of the law . . . was not settled until after [the] direct appeal had been decided . . . is not dispositive of whether the [unraised] issue was significant, obvious, and clearly stronger than the issues counsel presented on direct appeal. Fisher v. State, 810 N.E.2d 674, 677–78 (Ind. 2004).

6

While examination of the several issues Choate raised as compared to the one she did not might prove illuminating, assessing the likelihood of prejudice appears more productive. Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.") We therefore assume for sake of argument Carter's contention that Choate should have argued that the attempted murder instruction was defective.

While the instruction that attempted murder required a knowing step toward an intentional killing was substandard, it is apparent that the jury was told what the law required. During closing argument, both Carter and the State argued to the jury that the State was required to prove intent to kill in order to convict Carter of attempted murder. (Ex. F at 9–10, 33–39.)

The prosecutor declared during argument that the State had to prove each defendant "intended to kill" the victim and pointed to evidence that the prosecutor believed demonstrated this intent with regard to the attempted murder charge. (Ex. F. at 8–10.) He went on to point to the acts of hitting the victim in the head with a tire iron and strangling her as acts that were substantial steps toward killing the victim but that "simply failed" to achieve that result and that "additional evidence" of their "intent" was the statement, made by one of them, that they had to kill the victim and could not let her live because she could identify them and their failure to seek any medical help for her. (Ex. F. at 9–10.) Most significantly, he told the jury that to convict the defendants of attempted murder, the State had "to prove that each man, either aiding, abetting, or directly as a principal intended—committed some act, intended to kill her" and it was only for some reason not of their own doing that they failed to achieve that objective. (Ex. F at 8–9.)

After repeating that the defendants' "main intent" was to murder the victim, the prosecutor acknowledged that the jury might conclude that if this was true, the defendants could not logically have intended to confine the victim. (Ex. F at 11.) The prosecutor said he "might agree" with that reasoning and that if the jury wanted to "drop" the confinement charge on that basis, that was "fine." (Ex. F at 11.)

7

Defense counsel also argued that the State had to prove that Carter intended to kill the victim and that the evidence did not support a conclusion that he acted with that intent because, although Carter could have killed the victim, he did not do so. (Ex. F at 33–39.)

As the jury commenced its deliberations, therefore, it had before it these explanations about intent, an instruction that Carter's knowing actions must have constituted a substantial step towards an intentional killing, and the evidence described above. We conclude that there was insufficient prejudice flowing from Choate's performance to warrant relief.

## Conclusion

We affirm the post-conviction court.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.